FRANCIS HOWARD YOUNG, a minor by his parent and next friend FRANCIS L. YOUNG; and FRANCIS L. YOUNG, Plaintiffs

v.

CARIBBEAN ASSOCIATES, INC. d/b/a CARIBBEAN BEACH HOTEL and BEACH CLUB, and ST. CLAIR VIERA, Defendants and Third-Party Plaintiffs

v.

SEARS, ROEBUCK & COMPANY, Third-Party Defendant

## Civil No. 395-1970

## District Court of the Virgin Islands

Div. of St. Thomas and St. John

## April 23, 1973

THOMAS D. IRELAND, ESQ., St. Thomas, V.I., *for plaintiffs*

BAILEY, WOOD & ROSENBERG, ESQS., St. Thomas, V.I., *for defendants*

YOUNG, *Judge*

## MEMORANDUM OPINION

This is a tort and breach of warranty action tried by the Court without a jury. A father and his ten-year-old son seek recovery for mental anguish suffered by the father and bodily injuries suffered by the son brought about in unusual circumstances. The son, Francis Howard Young, was staying with his parents at the defendant Caribbean Beach Hotel. On New Year's Eve, 1969, the family was having dinner in the hotel dining room. At the end of the meal, the son volunteered to go through the dessert serving line to bring a Cherries Jubilee for his father. As the son reached the head of the serving line, the waiter in charge of flaming and serving the Cherries Jubilee found it necessary to kindle the flames by adding more rum to the chafing pan. He took a bottle of hundred-and-fifty-one-proof rum, which was stoppered with a narrow "slow pour" spout, and proceeded to pour the rum directly into the pan. As he did so, the spout either dropped out or was popped out by an internal combustion in the rum bottle and a quantity of volatile rum gushed out. An abnormally high flame resulted, which reached out to touch the boy, setting his shirt on fire. The boy suffered severe burns and has undergone considerable treatment for skin and flesh grafts and plastic surgery. The several ad damnum clauses in the multiple counts of the amended complaint request $200,000 compensatory damages and $100,000 exemplary damages for the son and $19,912 medical specials and $25,000 mental anguish damages for the father. The complaint bottoms recovery principally upon negligence of all defendants, but the breach of warranty and products' liability allegations were aimed primarily at Sears, Roebuck & Company, the vendor of the allegedly highly flammable boy's shirt.

█ Initially, and regrettably, I must disallow the father's claim of damages for mental anguish. The anguish

of seeing one's ten-year-old son in flames must be horrible and nightmarish and the continuing anguish of seeing, hearing and sympathetically feeling the child's ensuing pain and suffering must be, to say the least, debilitating and depressing. However, the general rule is that where the defendant is guilty of no more than negligence, a third party may recover only if he had some fear for his own safety. See 29 A.L.R.3rd 1337 §§ 10–19 (1970), 38 Am.Jur.2d, Fright, Shock, § 36. Perhaps the basis for the rule is a belief that the defendant otherwise owed (and breached) no duty to an unthreatened bystander; or, as a secondary but perhaps preferable explanation, a fear that the causal chain to the bystander will grow so attenuated that liability will be out of proportion to the wrong. For these reasons the rule applies even where the bystander is a parent of the victim, and so might be expected to suffer particularly deep and genuine anguish. The Restatement has adopted this majority view. See Restatement, 2d of Torts § 313(a) and comment (d). Since the law of the Virgin Islands is guided by the Restatement, the father has no recovery for what I believe to be an experience of genuine anguish.

■ The father's right to recover his expenditures for medical specials and the son's right to recover compensatory damages for his bodily injuries are clear. The hotel is, at the very least, accountable for its serving waiter's negligence in using an improperly stoppered bottle, which permitted the "slow pour" spout either to fall out or pop out, thereby discharging a large quantity of volatile rum. Moreover, as the evidence tended to show, the hotel's serving waiter was negligent in the first place in pouring the rum directly from the bottle and not from an intermediary bowl or pitcher. An experienced maitre d' hotel and chef testified that to pour directly from a bottle was to invite the flame to catch onto the stream of rum and leap from

the chafing pan to ignite the vaporous gases inside the bottle, blowing out the cork and turning the bottle into a veritable "flame thrower" or "blowtorch," capable of throwing a flame ten to fifteen feet. Although I need not decide that this in fact did happen, I do find·that it was negligent to pour directly from the bottle and not from an intervening bowl or wide mouth pitcher. In a sense, the dessert waiter does not seem morally culpable for he had not been trained in the proper handling of flames. Nonetheless, he and his employer should be responsible for the injuries caused to the boy, no matter how inadvertently they came about.

I further find that the negligence of the hotel and its serving waiter was the sole and proximate cause of plaintiff's injuries. The hotel for a time relied in part on the theory that the boy's shirt was itself highly flammable as evidenced by the vigor with which it burned and that this was an important intervening cause of the holocaust that developed. With this theory in mind, as well as the thought of allocation of damages between joint tort-feasors, the hotel impleaded Sears, Roebuck & Company as a third-party defendant. At the trial, however, a written statement of the waiter was produced which indicated that a substantial quantity of the rum had gushed directly onto the boy's shirt. This itself would be more than enough to support the combustion, no matter what the flammability of the shirt fabric might be. The third-party complaint against Sears was therefore dismissed upon the motion of plaintiff and Sears' counsel, with no objection raised by defendants' counsel. The action then proceeded against the serving waiter and the hotel alone. I also find that the boy was not guilty of contributory negligence. Although there was some testimony indicating that he was warned to stand back, the warning would have been, at

514

the very best, an insufficient caution to a normal boy of plaintiff's years.

With the question of liability settled, I must now address myself to the matter of damages. The father's medical expenses, and reasonably related outlays, have totaled some $12,352.08 to date. In addition, some further surgery will be needed in order to minimize the burn scars on the boy's face and body. Although it is difficult for the medical experts to estimate the costs of these future contemplated operations, the uncontroverted estimate given at trial of $6,000 appears reasonable. The father's total "special" damages would therefore come to approximately $18,352.08.

■ The most important and troublesome issue of damages is the award of compensable damages that must be granted to the son for his pain, suffering, permanent disfigurement and the effect thereof upon his psyche and social adjustment. That his pain was considerable is unquestioned. The boy was on fire for more than several seconds before any one of the astonished bystanders came to his rescue. Before falling to the floor, he tried desperately to tear his shirt off. Finally, after perhaps a full half minute of time, one of the waiters came to his rescue with a tablecloth to snuff out the fire. The father actually saw his son on fire but was unable to rush to his side because of the crowded dining room. When he reached his son, the waiters were already carrying the boy out of the dining room to the hotel office. An ambulance was called and soon the boy and his father were taken to the Knud-Hansen Memorial Hospital Emergency Room. Supportive and anti-shock treatment was rendered. The boy was treated by doctors Roy Anduze and Alfred Heath. Much of the treatment consisted of prevention of shock and infection, which involved, among other painful manipulations and dressings, debriding of the dead skin tissue which is a

515

particularly painful process. Doctors are reluctant to give pain killers for fear of causing the patient to become addicted to drugs. The boy was released from the St. Thomas hospital on January 17, 1970 and was flown with a medical attendant to Washington, D.C.

At the Washington Hospital Center several skin grafts were performed by Dr. Fry. On June 17, the boy was again admitted to the hospital for several injections of steroids into the hypertrophic scarred areas. Hypertrophic scarred areas are scars that are thickened and raised from the healthy, normal skin. There was hospitalization again in October, 1970 for further operations to improve the scarred areas.

From my personal observations of the boy's scars, I would say that the scars on his right cheek and beneath his chin are unsightly as are the scars on his chest and on the backs of both hands. The scar underneath the chin is actually a keloid and is red in color. There are two keloid formations on the chest. There was an attempt to remove one by excision, but the result was a scar worse than the one removed.

The doctor obtained skin for the skin grafts from the boy's left and right thighs. These areas are approximately six inches long and two and a half inches wide. These are called "donor sites" which will eventually become less noticeable, but, as indicated, they may always appear as "patches".

The medical testimony was generally that the boy received second and third degree burns over 30% of his body's surface. The boy has no injuries to his organs, nor to his eyes. He can make a fist and move his fingers in the normal way. In sum, he has no physical disabilities. The doctors are of the opinion that the scars and keloids on the face and chest areas can be further improved by a combination of excision and injections. One doctor opined

516

that surgery can make noticeable improvements and improve the boy cosmetically. However, there would have to be between three and five hospitalizations to achieve this improvement. The medical consensus is that time alone will show improvement on the scarred areas and that within a few years much of the scars should become less noticeable.

In attempting to reach some appraisal of the amount of dollar damages to compensate the boy for his pain, suffering and cosmetic disfiguration, I am referred to the several cases cited in 22 Am.Jur.2d § 393, pertaining to burns. Whether those annotations help to determine the amount of the damage award is questionable. It is no easy undertaking to make a judicial pronouncement that a certain damage award will fully compensate the boy for his pain, suffering and disfigurement and, at the same time, appear reasonable to the defendants for their negligence. A good judgment will probably be one which satisfies none of the parties. That being said and without more, I award the boy $80,000 and the father $18,352.08.

Sears, Roebuck & Company was impleaded into this action by the hotel defendant. It was not known until the second day of trial that the dessert waiter actually made a statement that quantities of rum splashed on the boy's shirt. Prior to this statement being introduced in evidence, it was generally believed that no part of the rum actually splashed on the shirt. Hence, because the shirt burned so vigorously, there were extensive laboratory tests of the fabric of the shirt conducted by experts for the hotel and for Sears. As it developed, there was no need for such tests. The amount of rum splashed onto the shirt would alone have caused the intense burning.

■ Sears was dismissed from the case before the end of the trial. It is now asking for attorney's fees to be charged against defendants as third-party complainants. As a prevailing party I believe Sears is entitled to some

reimbursement for its attorney's fees, but I am not persuaded in so ruling by the memorandum filed in support of Sears' motion for attorney's fees. I find no bad faith on the part of defendants' counsel in pursuing what was generally believed to have been a reasonable grounds for joint responsibility. The fact that counsel investigated and developed that avenue of responsibility is indicative only of good and thorough trial expertise. Hence, whatever award of attorney's fees to which Sears is entitled, is attributable, not by way of punishment against the unsuccessful third-party complainants, but to, at least in part, compensate Sears for the equally good trial expertise of its counsel in defending against any alleged joint responsibility.

Since I do not regard the Virgin Islands law pertaining to the award of counsel's fees to the prevailing party as being a call for full and complete reimbursement, I will award $6,000 counsel's fees against defendants in favor of Sears and $12,000 counsel's fees against defendants in favor of plaintiffs.