**ST. CROIX HOTEL CORPORATION, Appellant**

v.

**ASSOCIATION OF ST. CROIX CONDOMINIUM OWNERS, Appellee**

Civil Nos. 81-50 and 81-51

District Court of the Virgin Islands

Div. of St. Croix

September 30, 1981

JOEL HOLT, ESQ., Christiansted, St. Croix, V.I., *for appellant*

WARNER ALEXANDER, ESQ., Christiansted, St. Croix, V.I., *for appellee*

CHRISTIAN, *Chief Judge*

## OPINION

This case is before the Court on appeal of the December 12, 1980, Judgment of the Territorial Court of the Virgin Islands, Division of St. Croix. The decision will be affirmed in part, and remanded in part, in accordance with the following opinion.

The relevant facts of this case are as follows: Appellant St. Croix Hotel Corp. (hereinafter "Hotel") is the owner and operator of the St. Croix Hotel and the developer of the St. Croix Condominiums. On March 23, 1973, appellant Hotel and appellee Association of St.

Croix Condominium Owners (hereinafter "Owners") entered into a twenty (20) -year lease agreement (hereinafter "Lease") whereby the Owners leased a portion of the common areas of the St. Croix Condominiums, including the managerial apartment areas, bar, restaurant, kitchen, service and storage areas, pool and sundeck, to the Hotel in exchange for the Hotel's agreement to maintain those common areas "in resort condition", to provide all utilities, and to make available food and beverage services. On July 30, 1973, the Lease was modified to provide for a monthly rental payment of forty dollars ($40.00) by the Hotel to the Owners.

On March 18, 1980, the Owners served a thirty (30) -day eviction notice to the Hotel for its alleged failure to pay rent, to pay utilities, and to maintain the leased premises. The Hotel failed to vacate the premises. The Owners thereupon filed two law suits in the Territorial Court of the Virgin Islands (which were subsequently consolidated into one suit), seeking eviction, recovery of back rent, and recovery of the utilities used to date. A counterclaim was filed by Hotel for the alleged failure of the Owners to pay rent to the Hotel for a managerial apartment. On June 11, 1980, prior to a trial on the merits, the Hotel deposited the amount of rent due and owing to the Owners in the Registry of the Territorial Court. A full trial on the merits was held before the Territorial Court on June 24, 1980. After the trial, but prior to judgment, the Hotel deposited $2,393.33 in the Registry of the Territorial Court to cover the past due utility charges claimed by the Owners, costs, additional rent, and interest.

The Territorial Court rendered its judgment in this action on December 12, 1980, holding that the Hotel was in material breach of the Lease because of its failure to pay rent, failure to pay water charges and failure to properly maintain the leased premises. The Territorial Court found that the Hotel owed the Owners $2,147.31 for rent and water charges and that the Owners were entitled to restitution of the premises. The Court also concluded that the Hotel was entitled to a judgment for rent on the managerial apartment for the sum of $1,800.00. An award was made to the Owners of $1,545.00 for its costs and attorney's fees. The Hotel appealed the foregoing judgment to this Court and the Territorial Court set bond on appeal at $13,000.00.

The Hotel contends that there are five grounds for reversal of the Territorial Court judgment. Its first contention is that the court erred when it permitted parol evidence to be introduced at trial to clarify the Lease's description of the leased premises. The appellant contends that the description of the leased premises was not

ambiguous, and therefore, the parol evidence rule prohibits the introduction of any extrinsic evidence to construe the terms of the contract.

■■ We disagree. The appellant misinterprets the parol evidence rule. Restatement (Second) of Contracts § 240(c) (tentative draft 1973)[1] specifically provides that "[a]greements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . the meaning of the writing, whether or not integrated . . . ." Comment b to § 240 sheds further light on this issue, providing the following, in pertinent part:

> The expressions and general tenor of speech used in negotiations are admissible to show the conditions existing when the writing was made, the application of the words, and the meaning or meanings of the parties. Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances are disclosed. In cases of misunderstanding, there must be inquiry into the meaning attached to the words by each party and into what each knew or had reason to know.

In accordance with the provisions of Restatement (Second) of Contracts § 240 (tentative draft 1973), we conclude that it was proper for the trial court to allow the parties to testify as to their understanding of what areas were covered by the Lease.

■ Appellant's next argument is that the Territorial Court erred in finding that the Hotel had breached its covenant to maintain the leased premises in "resort condition." Again we must disagree. There was ample evidence presented to the trial court to support its conclusion that the Hotel had not maintained the demised premises in "resort condition." The Court's findings that the roof leaked, the building needed painting, the carpet was torn, and the swimming pool area was dirty, have adequate basis in the exhibits and the testimony. The evidence also supports the trial court's determination that the Hotel had the obligation to keep the aforesaid areas in a clean, neat, safe, and sightly condition.

■■ The appellant's third argument is that even if this Court finds that the Hotel breached its maintenance covenants, the trial

---

[1] The restatements of the law approved by the American Law Institute on the "rules of decision" in the courts of the Virgin Islands absent contrary local laws. 1 V.I.C. § 4.

594

court's decision to evict the Hotel should be overturned. The Hotel, in this regard, relies on the provisions of 28 V.I.C. § 292(a),[2] which bars forfeiture of a lease if the tenant remedies its breaches of a lease prior to judgment. The Hotel contends that it remedied all breaches of the Lease prior to the entry of judgment, and thus, the Owners' remedy was limited to damages only. The appellees counter this argument with the allegation that the Hotel is not entitled to the benefit of 28 V.I.C. § 292(a). The Owners argue that although all back rent and alleged water charges were paid into the Registry of the Territorial Court prior to the entry of judgment, the Hotel had not performed its maintenance obligations. The trial court made no finding regarding whether the Hotel had fulfilled all its obligations under the lease prior to judgment. Therefore, we will remand this case back to the trial court so that it may make a finding on that issue. If the Hotel was in compliance with all terms of the lease prior to the entry of judgment, as the Hotel claimed in its July 22, 1980, motion to dismiss, an entry of an Order of eviction was improper, and the trial court must reverse its judgment on this issue.

The fourth issue raised by the appellant is that of attorney's fees. Both the appellant and appellee applied for attorney's fees, but the trial court awarded fees to appellee only. Appellant contends that the Court thus abused its discretion. Since it prevailed on its counterclaim, appellant contends that it too was entitled to an award of fees.[3]

We are unable to determine whether the trial court in fact abused its discretion in failing to make an award of fees to appellant for the trial court did not articulate the ratio decidendi for its deci-

---

[2] 28 V.I.C. § 292(a) provides as follows:

"When in case of a lease of real property and the failure of the tenant to pay rent, the landlord has a subsisting right to reenter for such a failure, and may bring action to recover the possession of such property, and such action is equivalent to a demand of the rent and a reentry upon the property.

If at any time before judgment in such action the lessee or his successor in interest as to the whole or a part of the property pays to the plaintiff or brings into court the amount of rent then in arrears, with interest, and the costs of the action, and performs the other covenants or agreements on the part of the lessee, he shall be entitled to continue in the possession according to the terms of the lease."

[3] See 5 V.I.C. § 541(b) which provides the following in pertinent part:

"... there should be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto."

sion. A party who is victorious on a particular issue in a trial is not necessarily entitled to attorney's fees. Many factors are weighed and considered when a decision is made regarding attorney's fees. See, e.g., Goldstein v. John Hambers Watersports Center, Inc., 1981 St. T. Supp. 81 (D.V.I., Feb. 26, 1981). Thus, the trial judge may have had good reason to deny the award. Upon remand, the trial court must provide its reasons for its holding on attorney's fees. This Court will then be in a position to review the trial court's decision on this issue, if the appellant decides to again pursue an appeal.

The final issue raised by the appellant is whether the trial court erred when it set the amount of the appeal bond. The trial court set the appeal bond at $13,000, although the judgment rendered against the appellant was only for the sum of $2,147.31. The appellant contends that the reason the appeal bond was set at such a high sum was because the trial court's calculations of the amount included a sum which represented twice the fair market rental value of the property during the period of the appeal, in accordance with the provisions of 28 V.I.C. § 788.[4] Appellant contends that the double bond requirement of 28 V.I.C. § 788 is unconstitutional, as a similar Oregon statute was struck down by the United States Supreme Court as violative of the equal protection clause in Lindsey v. Normet, 405 U.S. 56, 74–79 (1972). Thus, appellant concludes that setting bond on appeal in that amount was erroneous.

We agree that the amount of the appeal bond was too high if it in fact included a sum representing twice the fair market rental value of the property during the period of the appeal. We are inclined to the view that the double bond requirement of 28 V.I.C. § 788 is unconstitutional. See Lindsey, supra. However, it is not clear that the trial court made such a calculation in its February 11, 1980, Order setting the amount of the appeal bond. The high amount of the appeal bond seems to be due, at least in part, to the fact that a sum was included in the calculation to represent the costs of the maintenance obligations of the appellant during the pendency of the appeal. Any error committed by the trial court in regard to the

---

[4] 28 V.I.C. § 788 provides the following:

"If judgment is rendered against the defendant for the restitution of the real property . . . no appeal shall be taken by the defendant from such judgment until, in addition to any undertaking otherwise required by law upon appeal, he gives an undertaking . . . for the payment to the plaintiff of twice the rental value of the real property of which restitution is adjudged from the rendition of such judgment until final judgment in the action, if such judgment shall be affirmed upon appeal."

appeal bond is now irrelevant, however, as the issue of the amount of the appeal bond is now moot. This case will be remanded to the trial court for further proceedings and thus we need not make a ruling on this issue as there is now no need for an appeal bond.

**KENNETH BAPTISTE, Petitioner**

v.

**BUREAU OF CORRECTIONS, VIRGIN ISLANDS OF THE UNITED STATES, Respondents**

Civil No. 81-272

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 13, 1981

KENNETH BAPTISTE, Lewisburg, Pennsylvania, *pro se*

DONALD BOUTON, ESQ., Acting Attorney General of the Virgin Islands (Department of Law), St. Thomas, V.I., *for respondents*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

Kenneth Baptiste, a prisoner in custody, is before the Court on his pro se petition for a writ of mandamus, 28 U.S.C. §§ 1361 and 1651 and 5 V.I.C. § 1361. The petition will be denied for the reasons set forth below.

Baptiste was convicted after a jury trial in the District Court of the Virgin Islands of unlawful entry, assault first degree, and robbery. On November 7, 1978, the petitioner was sentenced to an eight-year term of imprisonment. He served the initial two years of his imprisonment in the Virgin Islands in a correctional facility of the Virgin Islands Bureau of Corrections, but subsequently, by virtue of an existing contract between the Virgin Islands and the United States Government, was placed in the custody of the United States Bureau of Prisons. The petitioner is presently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania.

Petitioner presents one issue for our consideration. We are asked to determine whether the petitioner's constitutional rights were violated because he was not permitted to appear at the June 26, 1981, meeting of the Virgin Islands Parole Board. We find that the petitioner's rights were not violated inasmuch as the petitioner's application for parole was not considered at the June 26, 1981, meeting. The application was not brought on for discussion because the petitioner had not met all the eligibility requirements for parole. The unsatisfied requirement was that petitioner's prison records did not show that his conduct was uniformly excellent for at least six months preceding the date of his application. See 5 V.I.C. §§ 4601 and 4603 and 5 V.I. Rules & Regs. 4503(d)–1.(b) (setting forth the

requirement); and September 14, 1981, letter of Mr. J. P. Hendrick, Chairman of the Virgin Islands Board of Parole (stating that the petitioner did not meet that requirement).

Furthermore, even if the Virgin Islands Parole Board's procedures for review of parole applications were properly challenged, we find that such a challenge would more than likely be defeated as the Parole Board's procedures satisfy the requirements of the United States Constitution. In addressing this issue, we refer to the relatively recent decision of the United States Supreme Court in Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979), for the guiding principles of law.

■■ In Greenholtz, the Supreme Court stated that a parole statute whose language creates a mere "possibility" that a prisoner may be paroled does not give rise to a liberty interest that is entitled to the protection of due process. 442 U.S. at 9–11. However, the Court found that a parole statute whose language creates an "expectation" of parole does create "some measure of constitutional protection." 442 U.S. at 12. In making the distinction between those two types of statutes, the Supreme Court focused on the presence or absence of mandatory language in the statute. In Greenholtz, the statute at issue created a scheme whereby parole was mandatory *unless* certain specific conditions were found to exist.[1] In the Virgin Islands statute, on the other hand, there is a clear absence of mandatory language, leaving the decision regarding parole to the discretion of the Parole Board.[2] The scheme of the Virgin Islands Parole Statute,

---

[1] The relevant statute provided as follows:

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release unless it is of the opinion that his release should be deferred because:
(a) there is a substantial risk that he will not conform to the conditions of parole;
(b) His release would depreciate the seriousness of his crime or promote disrespect for law;
(c) His release would have a substantially adverse effect on institutional discipline; or
(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." (Emphasis added.) Neb. Rev. Stat. § 83-1, 114(1) (1976).

## ORDER

---

the institution in which he is confined, upon recommendation of the Warden, supported by the recommendation of a psychiatrist and/or psychologist, *may* be released on parole after serving one-third of such term or terms or after serving 10 years of a life sentence or of a sentence of over 30 years; Provided, however, That the Board of Parole, subject to the approval of the Governor, *in its discretion* by at least a two-thirds affirmative vote of all its members, upon recommendation by the Warden, supported by the recommendation of a psychiatrist and/or psychologist, is authorized to fix an earlier eligibility date for the release of prisoners on parole." (Emphasis added.)