**NORMA HAMLET, Plaintiff**

**v.**

**OLIVER EXTERMINATING, INC., Defendant/Third-Party Plaintiff**

**v.**

**WHITMIRE MICRO-GEN RESEARCH LABORATORIES, INC.**
**and SUPERIOR-ANGRAN, INC., Third-Party Defendants**

Civil No. 773/1998

Territorial Court for the Virgin Islands

Division of St. Croix

October 4, 2001

JOEL H. HOLT, ESQ., Christiansted, St. Croix, United States Virgin Islands, *Attorney for Plaintiff*

R. ERIC MOORE, ESQ., Law Offices of R. Eric Moore, Christiansted, St. Croix, United States Virgin Islands, *Attorney for Third-Party Defendant-Whitmire Micro-Gen Research Laboratories. Inc.*

MICHAEL J. SANFORD, ESQ., Sanford, Amerling & Associates, United States Virgin Islands, *Attorney for Defendant/Third-Party Plaintiff*

HENRY C. SMOCK, ESQ., Smock Law Offices, P.C., St. Thomas, United States Virgin Islands, *Attorney for Third-Party Defendant-Superior-Angran, Inc.*

DONOHUE, *Judge*

## MEMORANDUM OPINION

(October 4, 2001)

### I. INTRODUCTION

THIS MATTER came before the Court on Third-Party Defendants', Whitmire Micro-Gen Research Laboratories, Inc. ("Whitmire") and Superior-Angran, Inc., ("Angran"), Motions for Summary Judgment,

pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that Defendant/Third-Party Plaintiff's, Oliver Exterminating, Inc. ("Oliver"), Third-Party Complaint is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), codified as 7 U.S.C. §§ 136-136y. For the reasons set forth below, the Court will grant Defendants' Motions for Summary Judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The relevant facts are undisputed. Oliver is a pest control company doing business on St. Croix, United States Virgin Islands. Whitmire is a corporation that manufacturers, *inter alia*, a federally regulated insect Fogger called the "Pro Control Total Release Fogger" ("Fogger"), and Angran is a corporation that, *inter alia*, distributes these insect Foggers. Oliver uses these Foggers to exterminate any insects which may infest a specific area. The label on the Fogger directly instructs the user to "APPLY THIS PRODUCT AS SPECIFIED ON THIS LABEL." Specifically, the instructions read in pertinent part:

### DIRECTIONS:

1. Place newspaper on stand or table in center of the room to be fogged

   ...

5. Set Fogger on newspaper, leave room and close door.
6. After actuating Fogger, leave room or house at once. ...

### PHYSICAL OR CHEMICAL HAZARDS

...

**DIRECTIONS:** It is a violation of federal law to use this product in a manner inconsistent with its labeling.

Additionally, Whitmire's Technical Services Bulletin, which provides further guidance on the correct use of the Fogger, requires in pertinent part:

* Elevate the fogger by placing it on a chair, table or stand in the center of the room to be treated. The fogger should be placed 18-30" above floor. Cover the chair, table or stand and surrounding

area with several layers of newspaper, paper towels or plastic tarp. *It is important to <u>elevate</u> the fogger to provide the best dispersal of the contents. Try to cover a 3' radius around the can.* (Emphasis stated in the original).

On March 22, 1997, Oliver's owner, Eldon J. Providence ("Providence"), placed three Foggers on the floor in the ladies bathroom at Banco Popular de Puerto Rico in Sunny Isle, St. Croix ("Banco Popular"). Contrary to the instructions and warnings on the label, Providence released the Foggers without first placing a newspaper on a chair, table or stand and then setting the Fogger on the newspaper. Instead, Providence placed the Foggers on the uncovered floor and left the room. Providence did not go back to Banco Popular to retrieve the used canisters. Apparently, Providence ignored the instructions and warnings on the label as to the correct use of the product, especially the specific warning stating that it is a violation of federal law to use the product in a manner inconsistent with its labeling. Moreover, Providence testified in his deposition that he occasionally follows the instructions on the label because he considers them to be "optional." Two days later, on March 24, 1997, Plaintiff, Norma Hamlet ("Plaintiff"), an employee of Banco Popular, went to work at the bank's Sunny Isle branch. At approximately twelve noon, Plaintiff went to the bathroom and slipped and fell on allegedly slippery residue from the Fogger. Plaintiff asserts that her fall could have been prevented if Oliver had cautioned Banco Popular's employees of the potential slip hazard that existed after the Fogger was released. Plaintiff therefore claims that her injury resulted from Oliver's negligence.

## B. Procedural Background

On October 16, 1998, Plaintiff filed a negligence claim against Oliver alleging that she was injured by slipping on the floor in the ladies bathroom at Banco Popular. On November 6, 1998, Oliver filed an Answer and Affirmative Defenses to Plaintiff's Complaint. On October 22, 1999, Oliver filed a Third-Party Complaint against Third-Party Defendants, Whitmire and Angran ("Defendants"), which alleges two grounds for holding Defendants liable. Count I, a strict liability claim, alleges that Defendants are liable because they manufactured and distributed an unreasonably dangerous product by not warning users of

the potential slip hazard associated with the Fogger. Count II, a negligence claim, alleges that Defendants breached their duty to individuals who will foreseeably come into contact with the Fogger to insure it is not slippery. Alternatively, Count II alleges that Defendants failed to warn users of the potential slip hazard associated with the use of the Fogger and as a result, proximately caused Plaintiff's injuries. Whitmire and Angran filed their Answers and Affirmative Defenses to Oliver's Complaint on December 8, 1999 and December 21, 1999, respectively.

On September 5, 2000, Plaintiff and Oliver filed a Stipulation which allowed Plaintiff to Amend her Complaint. Oliver, however, did not file an Answer to Plaintiff's Amended Complaint. The Amended Complaint alleges that Oliver failed to: (1) follow the instructions of the manufacturer in placing the fogger at a specific elevation and placing materials underneath the fogger up to a three-foot radius; (2) inspect the premises after the canister had been utilized and to properly clean the area after the use of the fogger; (3) warn the bank's employees of the potential slip hazards that existed after the canister had been utilized; (4) place the canister in a location which would not allow the insecticide to disseminate as it should have, causing a film to develop in the area where the canister was located, thus creating the slippery condition; and (5) insure the canister operated properly and did not leave a residue after its operation.

On September 18, 2000, Whitmire moved for summary judgment on the grounds that Oliver's Complaint is barred by federal preemption. On October 10, 2000, Angran also moved for summary judgment on three grounds: (1) that Oliver has failed to present sufficient evidence to prove that Angran was negligent; (2) that Oliver has failed to present sufficient evidence to prove strict liability under RESTATEMENT (SECOND) OF TORTS § 402A (1977); and (3) that Oliver's Complaint is barred by federal preemption. Thereafter, Oliver filed an opposition to Defendants' summary judgment motions without attaching any supporting documents. Finally, on September 5, 2001, the Court heard oral arguments on Defendants' summary judgment motions.

## III. SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once this showing has been made, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

When considering a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The Court may not make credibility determinations or weigh evidence. *Id.* at 252. If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *See Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).

## IV. DISCUSSION

In ruling on Defendants' summary judgment motions, the Court must resolve two issues, to wit: (1) whether Oliver's tort law claims are federally preempted by FIFRA, and (2) whether Oliver has presented sufficient evidence to prove that Defendants are both negligent and strictly liable for Plaintiff's injuries. Although federal preemption by FIFRA appears to be a question of first impression in the Virgin Islands, the Court does not lack guidance. Several courts, both state and federal, have already considered this issue and produced a uniform result.[1]

---

[1] *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 123 L. Ed. 2d 387, 113 S.

## A. Preemption Principles

██ Under Article VI, the Supremacy Clause, of the United States Constitution, "the laws of the United States shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2.[2] The Supreme Court has held that state law that conflicts with federal law is invalid under the Supremacy Clause. *See Maryland v. Louisiana*, 451 U.S. 725, 726, 68 L. Ed. 2d 576, 101 S. Ct. 2114 (1981). Congressional intent determines whether a federal statute preempts state law. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990). That intent may be explicit in the statute itself. *See Jones v. Roth Packing Co.*, 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305 (1977). Accordingly, where Congress has included an express provision in the statute, there is no need to imply Congress' intent regarding preemption from other provisions. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992).[3]

---

Ct. 1732 (1993); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993); *King v. E.I. Du Pont, de Nemours & Co.*, 966 F.2d 1346 (1st Cir. 1993); *Papas*, 985 F.2d 516 (11th Cir. 1993); *Shaw v. Dow Brands*, 994 F.2d 364 (7th Cir. 1993); *Arkansas-Platte & Gulf Partnership*, 981 F.2d 1177 (10th Cir. 1993); *Bice v. Leslie's Pool Mart, Inc.*, 39 F.3d 887 (8th Cir. 1994); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994); *Taylor AG Indus. v. Pure Gro*, 54 F.3d 555 (9th Cir. 1995); *Lewis v. American Cyanamid Co.*, 294 N.J. Super. 53, 682 A.2d 724 (N.J. App. Div. 1996); *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244 (3d Cir. 1999); *Andrus v. Agrevo USA Co., 178 F.3d 395 (5th Cir. 1999)*. Accordingly, the above cases have held that FIFRA preempts claims for inadequate labeling or failure to warn.

[2] These principles are made applicable to the Virgin Islands through the Revised Organic Act, which authorizes the Virgin Islands legislature to enact territorial laws that are "not inconsistent with ... the laws of the United States made applicable to the Virgin Islands." *See* 48 U.S.C. § 1574 (a).

[3] The Supreme Court has recognized three ways in determining whether Congress intended legislation to preempt state law: (1) 'express preemption,' which arises when there is an explicit statutory command that state law be displaced, *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992); (2) 'field preemption,' which arises when federal law "so throughly occupies a legislative field as to make reasonable inference that Congress left no room for the States to supplement it," *see Cipollone*, 505 U.S. at 516; and (3) 'conflict preemption,' which arises when a state law makes it impossible to comply with both state and federal law or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

## 1. Federal Courts' Established Preemption Principles

In *Cipollone*, the Supreme Court articulated its preemption principles in the context of cigarette labeling under the Public Health Cigarette Act of 1969, codified as 15 U.S.C. §§ 1331-1340. Specifically, the Act's preemption provision states in relevant part:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334(b).

The Supreme Court held that this provision preempted Plaintiff's state law tort claims based on Defendants' failure to warn of the hazards of cigarette smoking. The Supreme Court also reasoned that "insofar as claims under either failure to warn theory require a showing that respondents' post-1969 advertising ... should have included additional warnings, those claims are preempted." *See Cipollone*, 505 U.S. at 524. Notably, the Supreme Court itself stated that its analysis in *Cipollone* should be applied to FIFRA preemption determinations. *See Taylor AG Indust. v. Pure-Gro*, 54 F.3d 555, 559 (9th Cir. 1995).[4]

The United States Court of Appeals for the Third Circuit has provided further guidance on FIFRA preemption in the seminal case of *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244 (3d Cir. 1999). In *Hawkins*, the Third Circuit relied on *Cipollone* and reasoned that "the EPA requirements for labeling pesticides are sufficiently specific to mandate preemption of claims based on state statutes of common law." *See Hawkins*,

---

Congress." *See Hines v. Davidowitz*, 312 U.S. 52, 85 L. Ed. 581, 61 S. Ct. 399 (1941).

[4] *See, e.g., King v. E.I. Dupont De Nemours & Co.*, 996 F.2d 1346, 1349 (1st Cir. 1993). In *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir. 1991), and *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 959 F.2d 158 (10th Cir. 1992), the Court vacated and remanded both cases for consideration in light of *Cipollone*. *See King*, 966 F.2d at 1349. On remand, the Court of Appeals in both cases concluded that FIFRA expressly preempts state common law actions against manufacturers of EPA registered pesticides to the extent such actions are predicated on claims of inadequate labeling or packaging. *See Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993) and *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177 (10th Cir. 1993).

184 F.3d at 251 (quoting *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 560 (9th Cir. 1995)). The Court held that the comprehensiveness of FIFRA "leads us to conclude the Hawkins's labeling claims are preempted. To hold otherwise would be to impose labeling requirements additional to those mandated by the EPA." *Id.* Therefore, this Court will rely on *Cipollone, Hawkins,* and their progeny for guidance in determining whether Oliver's common-law tort claims are federally preempted by FIFRA.

### 2. Express Preemption under FIFRA.[5]

Taken together, the language of the 1969 Cigarette Act in *Cipollone* and the language of FIFRA appear to be analogous. *See, e.g., Taylor AG Indust.*, 54 F.3d at 555.[6] On its face, FIFRA's language expressly preempts state law. Specifically, FIFRA's key preemptive provision reads in pertinent part:

> (a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this chapter.

---

[5] Under FIFRA, Congress created a comprehensive licensing and labeling scheme, for pesticides and other poisonous devices designed to kill insects, that culminates in the approval of the labels by the Environmental Protection Agency ("EPA"). *See Wisconsin Public Intervenor v. Morier*, 501 U.S. 597, 115 L. Ed. 2d 532, 111 S. Ct. 2476 (1991). Further, FIFRA establishes a complex process of reviewing the label under which the product is to be marketed. "In the registration process, the EPA must find that the labeling complies with FIFRA's requirements. 7 U.S.C. § 136a(c)(5)(B). FIFRA requires manufacturers to submit draft language addressing a number of different topics, including ingredients, directions for use, and adverse effects of the products. 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50. A final label must be submitted to the EPA prior to registration. 40 C.F.R. § 156.10(a)(6). Given the comprehensive nature of the FIFRA's labeling process, it is apparent that section 136(v)(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling." *See Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir. 1993).

[6] *Accord Shaw*, 994 F.2d at 371.

   (b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under the subchapter.

7 U.S.C. § 136v.

   In section (b), the term "requirements" includes not only state statutory law but also state common-law damages claims. *See Hawkins*, 184 F.3d at 244.[7] Further, the language of section (b) seems to indicate Congress' intent to preempt the states from regulating pesticide labeling. While FIFRA does not allow states to impose additional labeling requirements, its legislative history, however, confirms Congress' intent to allow states to impose more stringent constraints on the use of EPA-approved pesticides than those imposed by the EPA. *See, e.g., Ferebee v. Chevron Chemical Co.*, 237 U.S. App. D.C. 164, 736 F.2d 1529 (D.C. Cir.), *cert. denied*, 469 U.S. 1062, 83 L. Ed. 2d 432, 105 S. Ct. 545 (1984). This intent is supported by the House Committee Report which states: "in dividing the responsibility between the States and Federal Government for the management of an effective pesticide program, the Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging." *See* H.R. REP. NO. 92-511, 92d Cong., Sess. 16 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3993. Additional support can be found in the Senate Committee Report which stated that section 136v(b) "preempts any State or local requirements differing from such requirements under the Act." *See* S. REP. NO. 92-970, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4092, 4128; *see also* S. REP. NO. 92-838, 92d Cong., 2d Sess. 30 (1972), *reprinted in* 1972 U.S.C.A.A.N. 3993, 4021. Therefore, the Court will now examine each Count of Oliver's Complaint to determine whether it is preempted by section 136v of FIFRA.

## B. Express Preemption of Tort Law Claims by FIFRA

   ■ In Count I, a strict liability claim, Oliver alleges that Defendants are liable because they manufactured and distributed an unreasonably

---

[7] *Cf. Medtronic Inc. v. Lohr*, 518 U.S. 470, 487, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996) (stating that "if Congress' true intention was to preclude all causes of action, it could have stated all remedies, rather than requirements, under state law pertaining to pesticides ... are precluded.").

dangerous product by not warning users of the potential slip hazard associated with the Fogger. In Count II, a negligence claim, Oliver alleges Defendants breached their duty to individuals who will foreseeably come into contact with the Fogger to insure it is not slippery. Alternatively, Count II alleges that Defendants failed to warn users of the potential slip hazard associated with the use of the Fogger and as a result, proximately caused Plaintiff's injuries. In their motions, Defendants argue that these claims are preempted by FIFRA. Oliver attempts to save these claims from FIFRA preemption by arguing that "it is clear that the EPA imposed labeling requirements do not encompass the risk presented here: the danger that the residue of the pesticide would cause a third party to slip and fall." Opp. at 11. Although Providence testified that he did not follow the instructions on the label when he released the Fogger at Banco Popular, Oliver surmises that the Fogger probably malfunctioned. Opp. at 12.

More importantly, Oliver cannot avoid FIFRA by arguing that there is no preemption when the label is silent to the risks associated with the Fogger. Undoubtedly, Oliver's claim is based on a "failure to warn" theory which, under established precedent, is preempted by FIFRA. In order to prevail on a failure to warn theory, Oliver would have to prove that the Fogger's label contained insufficient information and that a more detailed label was warranted. *See, e.g., Taylor AG Indust.*, 54 F.3d at 560. Assuming, *arguendo*, Oliver proves that the Fogger's label contained insufficient information and is awarded damages by this Court, then the Court would be indirectly regulating pesticide labeling, an action which is expressly prohibited by section 136v(b) of FIFRA.

Furthermore, Oliver relies on *Ferebee v. Chevron Chemical Co.*, despite its negative treatment by other courts, to explain that the current trend is *against* the federal preemption of state tort law claims. In *Ferebee*, the District of Columbia Circuit held that FIFRA did not preempt Plaintiff's state tort law claims based upon the inadequacy of the warning labels on the canister. This Court does not find *Ferebee* persuasive in light of the Supreme Court's subsequent analysis in *Cipollone* and its progeny. It is therefore undisputed that the current trend is *for* federal preemption against Oliver's tort law claims.

## C. Absence of Sufficient Evidence to Support Oliver's Tort Law Claims

In its motion, Angran raised further grounds for summary judgment in addition to the issue of federal preemption, to wit: (1) that Oliver has failed to present sufficient evidence to prove that Angran was strictly liable under RESTATEMENT (SECOND) OF TORTS § 402A (1977); and (2) that Oliver has failed to present sufficient evidence to prove that Angran was negligent.

### 1. Strict Products Liability Under The Restatements of The Law

In its motion, Angran contends that summary judgment is proper because Oliver has not presented sufficient evidence to prove that the Fogger was a defective product under the RESTATEMENT (SECOND) OF TORTS § 402A. In response, Oliver argues that Angran cannot rely on the directives of RESTATEMENT (SECOND) OF TORTS because it has been superceded by the RESTATEMENT (THIRD) OF TORTS § 1 (1998). In reply, Angran explains that the RESTATEMENT (THIRD) OF TORTS is not applicable to this case because Courts in the Virgin Islands have yet to apply its directives to local disputes. The Court disagrees with Angran.

Prior to 1998, Courts in the Virgin Islands have applied the RESTATEMENT (SECOND) OF TORTS to local disputes in accordance with V.I. CODE ANN. tit. 1, § 4 which states:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local law to the contrary.

V.I. CODE ANN. tit. 1, § 4.

Although the RESTATEMENT (THIRD) OF TORTS § 1 was published in 1998, a Court in the Virgin Islands has recently applied its directives to a local dispute. *See Paul v. Electric Ave.*, D.C. Civ. Div. No. 1999/055, slip op. at 4 (D.V.I. App. Div. August 29, 2001). Notwithstanding, Oliver has not presented sufficient evidence to prove that Angran was strictly liable for Plaintiff's injuries under either Restatements (Second) or (Third) of Torts.

Under Section 1 of the RESTATEMENT (THIRD) OF TORTS: "one engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." RESTATEMENT (THIRD) OF TORTS § 1 (1998). Further, section 2(c) of the RESTATEMENT (THIRD) OF TORTS states in relevant part: "A product is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been avoided ... by the seller or distributor. ..." § 2(c).

█ In the case *sub judice*, Oliver has not presented any evidence to show that the Fogger was defective because of inadequate instructions or warnings which may have caused Plaintiff's injuries. As already stated, to defeat a summary judgment motion, Oliver cannot rest on the allegations in its complaint, but must make a showing of specific evidence that there is a genuine issue of material fact in dispute. Oliver has not done so. Instead, Oliver relies solely on its pleadings and on the arguments of counsel. Even the naked argument of Oliver's counsel during oral arguments does not make such a showing. More importantly, comment *a* has made it clear that a claim under section 2 would be based on a failure to warn theory which, as previously discussed, is preempted by FIFRA. *See* RESTATEMENT (THIRD) OF TORTS § 2(c) cmt. a.

Additionally, Oliver has not presented any evidence to support its strict liability claim under Section 402A of the RESTATEMENT (SECOND) OF TORTS. Specifically, section 402A provides in pertinent part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> >
> > ...

RESTATEMENT (SECOND) OF TORTS § 402A (1977).

█ In order to prevail under section 402A, Oliver must prove that the Fogger was defective, and that the defect proximately caused Plaintiff's injuries. *See Surface v. Caterpillar, Inc.,* 111 F.3d 1039 (3d Cir. 1997). A

111

product is considered defective where the seller "has reason to anticipate that danger may result from a particular use," and the seller fails to warn of such dangers or inadequately warns of such dangers. RESTATEMENT (SECOND) OF TORTS § 402A cmt. h. Here, Oliver has failed to show that Angran had reason to anticipate the danger which resulted from the Fogger's use and failed to warn Oliver of such danger. Hence, Oliver has failed to show that the Fogger was defective and as such, was the proximate cause of Plaintiff's injuries. Finally, comment *h* has also made clear that a claim under section 402A would be based on a failure to warn theory which is preempted by FIFRA. *Id.* In the absence of sufficient evidence to support this strict liability claim, Angran is therefore entitled to summary judgment.

### 2. Absence of Evidence to Support Negligence Claim

In Count II, Oliver alleges that Angran was negligent by breaching an alleged duty to prevent foreseeable injury to Plaintiff or to warn users of a potential slip hazard. In its motion, Angran asserts that Oliver has not presented sufficient evidence to support this negligence claim.

As stated above, to defeat a summary judgment motion, Oliver cannot rest on the allegations in its complaint, but must make a showing of specific evidence that there is a genuine issue of material fact in dispute. Again, Oliver has failed to come forward with specific evidence to support its allegations that Angran was negligent. In the absence of sufficient evidence to support this negligence claim, Angran is likewise entitled to summary judgment.

### CONCLUSION

Considering the facts in the light most favorable to Oliver, the Court finds that there are no genuine issues of material fact in dispute. Accordingly, summary judgment is granted as a matter of law.