**AMANDA HARTZOG, Individually and as Next of Friend of JAHMIL PEREZ, a Minor, Plaintiffs**

**v.**

**UNITED CORPORATION D/B/A PLAZA EXTRA, Defendant**

Case No. SX-04-CV-095

Superior Court of the Virgin Islands

Division of St. Croix

September 6, 2011

LEE J. ROHN, ESQ., ANNA M. WASHBURN, ESQ., Christiansted, St. Croix, USVI, *Attorneys for Plaintiffs*.

CARL A. BECKSTEDT, ESQ., EMILY SHOUP, ESQ., Christiansted, St. Croix, USVI, *Attorneys for Defendant*.

DONOHUE, *Presiding Judge*

## MEMORANDUM OPINION

(September 6, 2011)

**THIS MATTER** is before the Court on Motion for Summary Judgment filed by Defendant United Corporation d/b/a Plaza Extra. For

the reasons stated below, summary judgment will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Emanda Hartzog commenced this action individually and on behalf of her minor son, Jahmil Perez, for injuries her son sustained in accidentally ingesting the sap of a *dieffenbachia* houseplant she had purchased from a supermarket operated by Defendant United Corporation, doing business as Plaza Extra, in Christiansted, St. Croix, U.S. Virgin Islands. *Dieffenbachia*, or dumbcane by another name, is poisonous if ingested. Hartzog alleges Plaza Extra was negligent in failing to warn about the plant's poisonous properties, negligently misrepresented the plants as safe for the home, and negligently inflicted emotional distress. Plaza Extra denies liability, asserts affirmative defenses, and objects to punitive damages.

Plaza Extra began offering plants for sale in 2003 in its supermarket. (Pl Opp'n to Def. Summ. J. Mot. at Ex. 1 (Hamed Dep. 17:5-9, Oct. 8, 2009).) Hartzog purchased four *Dieffenbachia* plants from Plaza Extra in late 2003. (Compl. ¶ 4.) Gloria Johnson[1] had approached Wally Hamed, a representative of Plaza Extra,[2] about selling plants. (Hamed Dep. 18: 1-9.) Hamed knew Johnson as "a small individual local vendor." *Id.* at 17:15-17. He entered into an oral agreement with her whereby she delivered, displayed, priced, and took care of the plants and in exchange, Plaza Extra received twenty-five percent of the profits. *Id.* at 18:5-6. Johnson selected the varieties of plants sold in the supermarket. *Id.* at 22:4-9. "She had complete discretion on what she [brought] in." *Id.* at 26:21-22. Plaza Extra never inquired whether any of Johnson's plants were edible. *Id.* at 27:2-6, 46: 3-6. Hamed did not verify whether Johnson had a business license or sold plants elsewhere. 18:20-22, 19: 1-9. He also never inquired into Johnson's experience with plants. *Id.* at 27:11-18. He, himself, was unfamiliar with plants and was not experienced in horticulture. *Id.* at 22:21-24.

Neither Johnson nor Plaza Extra displayed any signs in the area where plants were sold. *Id.* at 32:18-21. (*Accord* Pl. Opp'n to Def. Summ. J.

---

[1] Gloria Johnson passed away in 2004 or 2005. (Hamed Dep. 12:24-25.) Hamed's role with in Plaza Extra was not identified in his Complaint.

[2] Hamed's role with in Plaza Extra was not identified in his deposition.

Mot., Ex. 4 (Hartzog Dep. 76:21-24, Oct. 2, 2009).) Hartzog claims Plaza Extra advertised the plants as being safe for the home and failed to warn customers about the plant's poisonous properties. (Compl. ¶¶ 5-7.) Hartzog did not speak with anyone at Plaza Extra regarding the plants. (Hartzog Dep. 77:16-18.) Hartzog never saw television or print advertisements for houseplants sold at Plaza Extra. *Id.* at 97:20-99:4. The plants were not identified by name. (Hamed Dep. 24:1-3; Hartzog Dep. 71:18-20.) Instructions on plant care or maintenance were not supplied. (Hamed Dep. 33:11-25.) No cautionary information regarding potential toxicity was provided. (Hamed Dep. 34:10-17, 45:1-4; Hartzog Dep. 71:13-17.) Plaza Extra did not determine whether any of the plants might be toxic to humans or animals. (Hamed Dep. 34:19-24.) Plaza Extra does not have procedures for ensuring the safety of products marketed by local vendors through its store. *Id.* at 40:18-24. Plant purchases were reflected as non-food on store receipts. (Hartzog Dep. 74:4-6;

A few months after Hartzog purchased the houseplant, her son became violently ill. Hartzog had placed one of the *dieffenbachia* plants on an outside balcony. (Hartzog Dep. 24:18-23.) Part of a leaf on the plant had broken off. Hartzog's son "tried to see if he could put it back together . . ." (Pl. Opp'n to Def. Summ. J. Mot., Ex. 5 (Perez Dep. 11:7-8, Sept. 30, 2009). Hartzog's older son said that his younger brother got sap on his hand and ingested the poison after sucking his fingers. (Perez Dep. 11:8-11.) At the time Hartzog's son took ill, Hartzog was on the property but not in the home. (Hartzog Dep. 20:8-19.) The boy was alone with his older brother for about ninety minutes while Hartzog waited outside for a construction worker to arrive. *Id.* at 19:25-20:2. Soon after ingesting the sap, Hartzog's son became unresponsive. (Hartzog Dep. 34:1-13.) He had difficulty breathing and his tongue swelled up. *Id.* at 34:15-25. The family took him to the emergency room. *Id.* at 37:17-21. On the way there, Perez went unconscious. *Id.* at 37:24-38:5. Once the family returned home to retrieve the plant, the doctor diagnosed the boy with *dieffenbachia* poisoning. He remained hospitalized for two days. As a result, Hartzog claims she "suffered extreme emotional distress, physical injuries, mental anguish, pain and suffering and loss of enjoyment of life. . . ." (Compl., ¶ 14.) She seeks damages, including punitive damages, along with costs and fees.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact . . ." FED. R. CIV. P. 56(c)(2) (applicable via SUPER. CT. R. 7.)[3] "A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010). "Facts that could alter the outcome are 'material facts' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Clark v. Modern Group, Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (citations omitted). "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case. A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law." *Id.* (citations omitted). The court may grant summary judgment as to the entire action. "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." FED. R. CIV. P. 56(d)(1).

■■ Here, Hartzog appears to have alleged three causes of action against Plaza Extra.[4] Individually, and on behalf of her son, Hartzog alleged negligence. (*See* Compl. ¶ 13.) individually, and on behalf of her son, Hartzog alleged negligent misrepresentation in marketing "the plants [as] safe for household use." *Id.* Lastly, on her own behalf, Hartzog alleged negligent infliction of emotional distress. *Id.* ¶ 14 ("Plaintiff Amanda Hartzog, suffered extreme emotional distress, physical injuries,

---

[3] In 2010, Congress substantially revamped Federal Rule of Civil Procedure 56. *See generally* FED. R. CIV. P. 56 (2011 rev. ed.). The rule was "revised to improve the procedures for presenting and deciding summary-judgment motions. . . . The standard for granting summary judgment remain[ed] unchanged." *Id.* at adv. comm. notes: 2010 Amend. As Plaza Extra filed its motion for summary judgment prior to the amendment, the Court employs here the version of the rule in effect at the time of filing.

[4] Unfortunately, Hartzog did not plead any claims by name in her three-page Complaint. The word "count" does not appear at all. Since "[p]leadings must be construed so as to do justice," the Court has taken a liberal view of Hartzog's Complaint to infer all plausible causes of action. FED. R. CIV. P. 8(e).

mental anguish, pain and suffering and loss of enjoyment of life. . . ."). "Summary judgment is appropriate only if there are no genuine issues of material fact and the *relevant law* entitles the moving party to judgment." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (emphasis added). Here, Plaza Extra claims no material facts remain in dispute regarding negligent representation. Both Plaza Extra and Hartzog disagree as to the law governing Hartzog's negligence claim. Neither party addressed negligent infliction of emotional distress. Accordingly, the Court declines to address it here. Preliminarily, the Court notes that the parties' uncertainty regarding the proper standard of care "squarely raises the issue of choice of law." *In re Manbodh Asbestos Litig. I.*, 47 V.I. 215, 224 (Super. Ct. 2005) (*"Manbodh I"*). "The nature of the legal duty owed by a defendant is generally a question of law." *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 429 (3d Cir. 1991). It is axiomatic, therefore, that this Court must determine the proper standard to apply, particularly because the law will determine factual materiality. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. APPLICABLE LAW

Plaza Extra argues that as a retailer it should be held to the standard of care stated in Section 388 of the RESTATEMENT (SECOND) OF TORTS. (Def. Summ. J. Mot. 3 (citing RESTATEMENT (SECOND) OF TORTS § 388 (1965)).) Section 388 provides that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability . . . for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them . . . of the facts which make it likely to be dangerous.

RESTATEMENT (SECOND) OF TORTS § 388 (1965). Plaza Extra argues that "[t]he duty imposed by § 388 upon the supplier of a chattel . . . is to exercise reasonable care to give . . . the information *which the supplier possesses*, and

which he should realize to be necessary to make its use safe for them." (Summ. J. Mot. 4 (emphasis in original).) Selling a houseplant, Plaza Extra argues, " 'does not of itself impose . . . a duty to make an inspection . . . no matter how cursory, in order to discover whether it is fit for the use for which it is intended.' " *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 388 cmt. g (1965)). Plaza Extra asserts that it is not in the business of selling plants. *Id.* at 5. It "was not aware of any dangerous propensity of the *Dieffenbachia* plant." *Id.* The plant was sold as a houseplant and "not as a food item intended for human consumption." *Id.* Because Section 388 does not impose an inspection duty, and because Plaza Extra had no knowledge of *Dieffenbachia* toxicity, Plaza Extra "breached no duty to Plaintiff by failing to warn her of the plant's properties, and [therefore] is entitled to summary judgment." *Id.*

If Section 388 supplied the appropriate standard of care here, Plaza Extra would prevail on summary judgment. Liability under Section 388 is premised upon the tortfeasor's "failure to exercise reasonable care to *give . . . any information* as to the character and condition of the chattel *which he possesses* . . . RESTATEMENT (SECOND) OF TORTS § 388 cmt. b (1965). Neither party disputes that Plaza Extra did not give any information, in the form of a warning, handling or growth instructions, or otherwise, regarding the houseplant Hartzog purchased. (Resp. to Def.'s Stmt of Undisputed Facts in Supp. of Summ. J. & Pl's Stmt of Add'l Facts Opp. Summ. J. 7, filed Mar. 18, 2010 (hereinafter 'Pl. Add'l Facts Stmt."); Hamed Dep. 34:14-23.) Similarly, neither disputes that Plaza Extra lacked experience with plants or knew that any of the plants sold at the supermarket could cause harm. (Def. Stmt of Undisputed Facts in Supp. of Summ. J. ¶¶ 2,4, filed Feb. 25, 2010 (hereinafter "Def. Undisputed Facts Stmt."); *Accord* Pl. Add'l Facts Stmt. 5.) Liability under Section 388 is also imposed only for "physical harm . . . caused by the use of the chattel . . . in the manner for which it is supplied." RESTATEMENT (SECOND) OF TORTS § 388 cmt. e. (1965). Neither party disputes that *dieffenbachias* are not supplied for ingestion. (Def. Undisputed Facts Stmt. ¶ 5, filed Feb. 25, 2010. *Accord* Pl. Stmt of Add'l Facts 5.) Accordingly, no genuine dispute remains between the parties regarding Plaza Extra's failure to warn Hartzog about the toxicity of *dieffenbachias*, nor is there a genuine dispute that Plaza Extra's lacked knowledge about the toxicity of *dieffenbachia.*

In rebuttal to this conclusion, Hartzog argues that Plaza Extra "fails to address the proper standard of duty of care . . . (Pl. Opp'n to Def. Summ. J. Mot. 1.) "Section 388 articulates the 'general principles [governing] a product supplier's obligation to warn users of hazards associated with that product.' " *Id.* at 6 (quoting *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 739 (3d Cir. 1990)). Since Plaza Extra had no knowledge of the plant's toxicity, Hartzog could not prevail. Instead, Hartzog asserts that "another law governs this situation more appropriately, and that is RESTATEMENT (SECOND) OF TORTS § 344." *Id.* at 7.

If Section 344 supplied the appropriate standard of care here, Plaza Extra, a possessor of land, could be found liable to Hartzog for the accidental, negligent, or intentional acts of Johnson, a third person, either because of Plaza Extra's failure to discover that Johnson was selling toxic plants or because Plaza Extra failed to warn its customers. (Pl. Add'l Facts Stmt. 8.) Pursuant to Section 344

[a] possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused the accidental, negligent, or intentional harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

RESTATEMENT (SECOND) OF TORTS § 344 (1965). Hartzog argues that Plaza Extra's lack of knowledge of, and failure to warn about, *dieffenbachia* toxicity could subject it to liability under Section 344 because, as a business owner, it "was required to exercise reasonable care to discover whether the plants Ms. Johnson was selling at [the supermarket] were harmful to its business invitees . . . (Pl. Add'l Facts Stmt. 3.) In rebuttal, Plaza Extra argues that Section "344 could not be more inappropriate for the facts of this case. [Section] 344 applies to injuries *while on* the business premises. Plaintiffs were not injured while on [Plaza Extra]'s premises." (Def. Reply to Pl's Opp'n to Summ. J. Mot. 2 (emphasis in original).) That conclusion is cor-

66

rect. Section 344 imposes liability on business owners for physical harm caused "to members of the public *while they are upon the land . . .*" RESTATEMENT (SECOND) OF TORTS § 344 (1965) (emphasis added). If, while shopping at the supermarket, Hartzog's son accidentally ingested the *dieffenbachia* sap, then Plaza Extra could be found liable, as a business owner, for failing to discover that Johnson, a third person, intentionally, negligently, or accidentally failed to provide warnings about *dieffenbachia* toxicity. That, however, is not what happened in this matter and, therefore, Section 344 is also inapplicable here.

The difficulty determining the applicable standard of care is apparent here. Neither Section 388 nor Section 344 of the RESTATEMENT (SECOND) OF TORTS adequately applies here. At root, this case sounds in product liability. Hartzog purchased a product, a *dieffenbachia* plant, from a retailer, Plaza Extra. The product is alleged to have caused injuries to Hartzog's son. As a restatement approved by American Law Institute, the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY would presumably apply here. However, neither party cited to it in their briefs. Therefore, the Court must first address whether RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITIES governs.

### · a. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY

In the Virgin Islands, a cause of action for injury caused by a product was, until recently, governed by Section 402A of the RESTATEMENT (SECOND) OF TORTS. Pursuant to Section 402A,

> [o]ne who sells any product in a defective condition unreasonable dangerous to the user . . . is subject to liability for physical harm . . . if
>
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A (1965). Section 402A applies to retailers as well as manufacturers. *Id.* § 402A cmt e. Liability does not reach the occasional seller, however. *Id.* § 402A cmt. f. Liability may be imposed for injuries to the purchaser's family members. *Id.* § 402A cmt 1. But liability "applies only where the product is, *at the time it leaves the seller's hands . . . unreasonably dangerous* to him." *Id.* § 402A cmt. g (emphasis

67

added). "The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed." *Id.*

"The major thrust of § 402A was to eliminate privity so that a user or consumer . . . could bring an action against a manufacturer, as well as against any other member of a distributive chain that had sold a product containing *a manufacturing defect*." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY 3. Litigation under Section 402A for failure to warn met with procedural hurdles. *See, e.g., Martin v. S.C. Johnson & Sons, Inc.*, No. 91-cv-347, 1996 U.S. Dist. LEXIS 19722 (D.V.I. Mar. 21, 1996) (adopting Section 388's into Section 402A product liability actions), *aff'd* 107 F.3d 7 (3d Cir. 1997). In *Martin*, the District Court granted summary judgment in favor of the manufacturer of a cleaning product sold in bulk to a hotel chain on St. John. *Id.* at *3. The plaintiff, a hotel employee, sued for injuries caused when the cleaning product splashed in her eyes. *Id.* One claim alleged strict liability against the manufacturer for failure to warn. *Id.* at *15. In finding for manufacturer, the court adopted the knowledgeable purchaser defense available in negligence actions and applied it to the plaintiffs product liability claim. The court reasoned that

> duty to warn closely resembles the law of negligence, even in a strict liability action since the language in concepts of reasonableness which determine unreasonable risk under the RESTATEMENT OF TORTS 2d § 402A are the same concepts used in the negligence case. The supplier has a duty to warn under strict liability when it would be unreasonably dangerous to market the product without a warning, or where the risk of harm would be unreasonable without an appropriate warning; if the failure to warn is not negligent, the product is not "defective," and there is no strict liability.

*Id.* at *22. The court found that the manufacturer's warnings, albeit on the product shipped in bulk, was adequate and that it was reasonable for the manufacturer to presume the hotel would pass its warnings to the end user. *Id.* at *22.

As evidenced in *Martin*, "[Section] 402A, created to deal with liability for manufacturing defects, could not appropriately be applied to cases of . . . defects based on inadequate instructions or warnings." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY 7 (1998). Failure

to warn was often construed as a "defect" in manufacturing. *See, e.g., Martin*, at \*22 (" 'if the failure to warn is not negligent, the product is not "defective," and there is no strict liability.' ") (quoting AM. L. PROD. LIAB. § 32:30 (3d ed.)); *Chelcher v. Spider Staging Corp.*, 892 F. Supp. 710, 715, 32 V.I. 320 (D.V.I. 1995) ("for a jury to conclude that the spider in question in fact caused Chelcher's injuries, it would first have to assume that an alternative "design," i.e., the *availability . . . of warnings and instructions*, would have caused Chelcher to act differently.") (emphasis added). Accordingly, in 1998, the American Law Institute approved "an almost total overhaul of Restatement Second as it concerned] the liability of commercial sellers of products." *Id.* at 3. Previously, "a nonmanufacturing supplier . . . [wa]s generally not liable for harm caused by the dangerous character of [an] item if the seller did not know or had no reason to know that the item was, or was likely to be, dangerous." AM. L. PROD. LIAB. § 32:39 (3d ed. 2011). Now, "a seller or distributor who sells or distributes as its ow n a product manufactured by another is subject to the same liability as though the seller or distributor were the product's manufacturer . . . because . . . the seller is presumed to cause the product to be used or consumed, in part at least, in reliance on the seller's reputation." *Id.*

After the American Law Institute approved the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, a few Virgin Islands courts began applying it to the cases before them. *See, e.g., Paul v. Electric Ave.*, D.C. Civ. App. No. 1999/055, 2001 U.S. Dist. LEXIS 14261 (D.V.I. App. Div. Aug. 29, 2001) (unpub.) (applying RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (1998)); *Hamlet v. Oliver Exterminating, Inc.*, 44 V.I. 99, 110-12 (Terr. Ct. 2001). In *Hamlet*, this Court disagreed with a third-party defendant's claim that "the RESTATEMENT (THIRD) OF TORTS [wa]s not applicable . . . because [c]ourts in the Virgin Islands have yet to apply its directives to local disputes." *Hamlet*, 44 V.I. at 110. Referencing the Appellate Division's decision, though unpublished, in *Paul*, this Court granted summary judgment after applying the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY. In subsequent years, however, nearly every court presented with the same question declined to apply the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY. In a well-reasoned decision, another trial court found the products liability restatement inapplicable in the Virgin Islands. *See generally Manbodh I.*, 47 V.I. 215. That decision runs counter to the pattern and practice of

Virgin Islands courts since enactment of Section 4. Accordingly, this Court must examine Virgin Islands courts' application of the restatements of law as well as *Manbodh I* before applying the products liability restatement here.

## b. RESTATEMENTS IN VIRGIN ISLANDS COURTS GENERALLY

Application of the common law in the Virgin Islands was first adopted in 1921 when a set of codes for St. Thomas and St. John, for St. Croix, were passed. *See* V.I. CODE ANN. tit. 1, § 4 (1995) (historical source note) (citing Code of St. Thomas/St. John, tit. IV, ch. 13, § 6 (1921) ("1921 Codes")). *See generally Manbodh I*, 47 V.I. at 228-30. The 1921 Codes required that " [t]he common law of England as adopted and understood in the United States shall be in force in this District, except as modified by this ordinance." V.I. CODE ANN., tit. 1, § 4 (1995) (historical source note) (quoting 1921 Codes tit. IV, ch. 13, § 6). Absent from this mandate, however, was a hierarchy or any sort of direction for determining which jurisdiction or jurisdictions to consider when applying the common law. Understandably, attorneys sought to sway courts with the legal authorities that bolstered their positions.[5] Without binding precedent to employ, early Virgin Islands courts had to consider competing approaches from numerous jurisdictions and then choose the legal authority they thought best applied to the cases before them. Outcomes differed depending on the judge and the authorities cited. To further complicate matters, the Virgin Islands did not have an official reporter for its court decisions until 1959.[6]

---

[5] *See, e.g., Tebbs v. Alcoa Steamship Co.*, 139 F. Supp. 56, 59, 3 V.I. 186 (D.V.I. 1956) ("The defendant has cited the case of *J. C. Penny Co. v. Robison*, 128 Ohio St. 626, 193 N.E. 401 (Ohio 1934), and has shown the application of that doctrine down through numerous citations. The plaintiff has cited the case of *Bury v. F. W. Woolworth Co.*, 129 Kan. 514, 283 P. 917 (Kan. 1930), and has shown the application of its doctrine down through numerous citations. The well written briefs on both sides show an impressive array of cases for each.") (secondary reporter citations omitted).

[6] Additional difficulties arose due to the lack of resources made available to the Virgin Islands. Former Governor John D. Merwin detailed a few of the difficulties attendant to practicing law in the Virgin Islands:

Unfortunately, no provision was made for keeping the codes of 1921 up to date. No supplements were ever prepared during the period of thirty-five years while they remained the law of the land. The laws promulgated in the two separate codes were amended and the amendments amended through the years. In time, the accumulated mass of laws enacted by the Colonial Councils and, later, the Municipal Councils, left

Presumably, the Restatements were initially suggested out of concerns for judicial economy.

Writing for the United States Court of Appeal for the Third Circuit, Judge Albert B. Maris reasoned that since "the Virgin Islands have adopted the rules of the common law of England as followed and understood in the United States . . . we think that the district court in applying those rules is justified in following the well considered expressions of them which the American Law Institute has incorporated in its Restatements of the Law." *Callwood v. V.I. Nat'l Bank*, 221 F.2d 770, 775, 3 V.I. 540 (3d Cir. 1955). Judge Maris sought to make the Restatements mandatory through *stare decisis*. But *Callwood* applied only to the 1921 Codes. *See id.* at 775 n.4 (citing 1921 Codes tit. 4, ch. 13, § 6). Two-years after Callwood, however, the Legislature made the restatements mandatory by statute when it enacted Section 4.

■ In examining this statute, the Court must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Smith v. Magras*, 124 F.3d 457, 462, 37 V.I. 464 (3d Cir. 1997) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)). If the language of the statute is clear, the court's inquiry stops there. *Id.* Only when the language of the statute is unclear will courts look beyond the statute for assistance in ascertaining its meaning.

■ Section 4 of Title 1 of the Virgin Islands Code requires that

> [t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so

doubt as to the completeness and accuracy of these codes. Legal research was hit or miss, with the winning lawyer often hitting the loser with what he had missed in his search. Many lawyers went into court convinced that they knew the current status of the law only to be confronted with a slip of paper on which was printed an amendment to the law of which they had no knowledge.

To make matters even more confusing, there was no system for maintaining a record of legal decisions rendered by either the District Court or the police courts or of making them available to members of the legal profession or to the public. Most lawyers were obliged to rely on their own briefs and records of cases for precedents. As a result, the legal profession found it necessary to lean heavily on precedents from states and other territories where records of legal decisions were maintained.

John D. Merwin, *The U.S. Virgin Islands Come of Age: A Saga of Progress in the Law*, 47 A.B.A. J. 778, 779 (Aug. 1961).

expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. CODE ANN. tit. 1, § 4 (1995). A plain reading of Section 4 is revealing, particularly when broken down into its constituent parts. Section 4 directs courts to employ in their decisions (1) the rules of the common law; (2) as found in the approved Restatements; (3) and if not found therein, as generally understood and applied in United States, (4) but only where no local law exists to the contrary. *Accord Miller v. Christian*, 958 F.2d 1234, 1237, 27 V.I. 363 (3d Cir. 1992). Explicit within the statute is a hierarchy of authorities. *Id.* ("[Section 4] 'directs us to examine the common law first as expressed in the Restatements, and then as generally understood and applied in the United States.'") (quoting *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77 (3d Cir. 1986)). Implicit within the statute is an assumption that local law may come into conflict with the restatements or with generally-applied common law principles.

In adopting a comprehensive code for the Territory, the Virgin Islands revised the prior common law requirement to "more accurately . . . ex pressed] the concept of the Common Law as constituting a body of rules established by precedent, as distinguished from a body of statutory law, and to extend the application of the rules to the restatements of the law prepared and approved by the American Law Institute." V.I. CODE ANN. tit. 1, § 4 (1995) (historical source note). Following the enactment of Section 4, Virgin Islands courts consistently applied the common law if found within the restatements approved by the American Law Institute. For example, Virgin Islands courts applied the RESTATEMENT OF CONTRACTS, first published in 1932,[7] the RESTATEMENT OF CONFLICTS OF LAWS, first published in 1934,[8] the RESTATEMENT OF TRUSTS, first

---

[7] *Sigal v. Three K's, Ltd.*, 456 F.2d 1242, 1243 (3d Cir. 1972) (applying RESTATEMENT (FIRST) OF CONTRACTS §§ 550-51 (1932)); *Vitex Mfg. Corp. v. Caribtex Corp.*, 377 F.2d 795, 798, 6 V.I. 166 (3d Cir. 1967) (applying RESTATEMENT (FIRST) OF CONTRACTS § 329 (1932)).

[8] *De Pinto v. Pinto*, 6 V.I. 179, 182-84 (D.V.I. 1967) (citing RESTATEMENT (FIRST) OF CONFLICTS OF LAWS §§ 7, 10, 32, & 146 (1934)). *See also Weston v. Stuckert*, 329 F.2d 681, 682 n.3, 4 V.I. 539 (1st Cir. 1964) (Maris, J., siting by designation) (applying RESTATEMENT (FIRST) OF CONFLICTS OF LAWS § 239 (1934) as Virgin Islands law applicable in land dispute with Puerto Rico).

published in 1935,[9] the RESTATEMENT OF TORTS, first published in 1939,[10] and the RESTATEMENT OF JUDGMENTS, first published in 1942.[11] Courts continue to apply the RESTATEMENT OF RESTITUTION, published in 1937.[12] The RESTATEMENT OF AGENCY, published in 1933, was applied only once, just prior to the enactment of Section 4.[13] Since the Virgin Islands codified many of its property laws, resort to the Restatements of Property was not generally required. Nonetheless, where applicable, Virgin Islands courts also applied the Restatements of Property, first published from 1936 through 1944, to cases before them.[14]

Virgin Islands courts continued this practice after the American Law Institute began revising its restatements. Where a restatement was revised, Virgin Islands courts transitioned to it. When the American Law Institute revised its trusts restatements in 1957, Virgin Islands courts transitioned to the RESTATEMENT (SECOND) OF TRUSTS.[15] When the American Law

---

[9] *See, e.g., Bishop v. Bishop*, 257 F.2d 495, 503-04, 3 V.I. 655 (3d Cir. 1958) (Biggs, C.J., dissenting) (applying RESTATEMENT (FIRST) OF TORTS § 63 (1937)).

[10] *See, e.g., Skeoch v. Ottley*, 377 F.2d 804, 810, 6 V.I. 241 (3d Cir. 1967) (applying RESTATEMENT (FIRST) OF TORTS § 614 (1939); *Polhemus v. Water Island, Inc.*, 252 F.2d 924, 927, 3 V.I. 641 (3d Cir, 1958) (citing RESTATEMENT (FIRST) OF TORTS §§ 479-80 (1939)).

[11] *Lewis v. Thomas*, 489 F.2d 700, 701, 10 V.I. 649 (3d Cir. 1973) (applying RESTATEMENT (FIRST) OF JUDGMENTS § 69 (1942)).

[12] *Isidor Paiewonsky Assocs., Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 152, 28 V.I. 448 (3d Cir. 1993) (applying RESTATEMENT (FIRST) OF RESTITUTION § 74 (1937)); *Francois v. Francois*, 599 F.2d 1286, 1291 (3 d Cir. 1979) (applying RESTATEMENT (FIRST) OF RESTITUTION § 166 (1937)); *Peppertree Terrace v. Williams*, 52 V.I. 225, 244-45 (2009) (Swan, J., concurring) (applying RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937)); *Callwood v. Cruse*, 47 V.I. 396, 405 (Super. Ct. 2006) (applying RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937)). *See also Weston v. Stuckert*, 329 F.2d 681, 682 n.3, 4 V.I. 539 (1 st Cir. 1964) (Maris, J., siting by designation) (citing RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937) as Virgin Islands law applicable in land dispute with Puerto Rico). Efforts to approve a second edition of were unsuccessful. *See generally* RESTATEMENT (THIRD ) OF RESTITUTION AND UNJUST ENRICHMENT at forward (2011).

[13] *Callwood v. V.I. Nat'l Bank*, 221 F.2d 770, 777 (3d Cir. 1955) (applying RESTATEMENT (FIRST) OF AGENCY § 37(1) (1933)).

[14] *See, e.g., Grubel v. MacLaughlin*, 286 F. Supp. 24, 31, 6 V.I. 490 (D.V.I. 1968) (applying RESTATEMENT (FIRST) OF PROPERTY: SERVITUDES § 568 (1944)).

[15] *Smith v. Williams*, 698 F.2d 611, 614, 19 V.I. 642 (3d Cir. 1983) (applying RESTATEMENT (SECOND) OF TRUSTS §§ 23, 65, 112 (1957)); *Wallace v. Kilbride*, 319 F.2d 760, 763, 4 V.I. 480 (3d Cir. 1963) (applying RESTATEMENT (SECOND) OF TRUSTS §§ 442-43 (1959)); *In re Estate of Savain*, 43 V.I. 215, 219-228 (D.V.I. App. Div. 2000) (applying various sections of RESTATEMENT (SECOND) OF TRUSTS (1959); *Hansen v. Gov't of the V.I.*, 53 V.I. 58, 75 n.2

Institute revised its agency restatement in 1958, Virgin Islands courts transitioned to the RESTATEMENT (SECOND) OF AGENCY.[16] When the American Law Institute revised its agency restatements in 2005, Virgin Islands courts transitioned to the RESTATEMENT (THIRD) OF AGENCY.[17] When the American Law Institute revised its conflicts restatement in 1969, Virgin Islands courts transitioned to the RESTATEMENT (SECOND) OF CONFLICT OF LAWS.[18] Virgin Islands courts also transitioned to the RESTATEMENT (SECOND) OF CONTRACTS once the American Law Institute revised it in 1979.[19] Upon the American Law Institute revising its judgments restatement in 1982, Virgin Islands courts transitioned to the

(Super. Ct. 1999) (applying RESTATEMENT (SECOND) OF TRUSTS (1959)). *See also Weston v. Stuckert*, 329 F.2d 681, 682 n.3, 4 V.I. 539 (1st Cir. 1964) (Maris, J., siting by designation) (applying RESTATEMENT (SECOND) OF TRUSTS § 404 (1959) as Virgin Islands law applicable in land dispute with Puerto Rico). In 2003, the American Law Institute approved a second revision, the RESTATEMENT (THIRD) OF TRUSTS. The Court has not uncovered any reported cases applying the RESTATEMENT (THIRD) OF TRUSTS. But *see Airlines Reporting Corp. v. Belfon*, No. 2003-cv-146, 2010 U.S. Dist. LEXIS 97349 (D.V.I. Sept. 16, 2010) (applying RESTATEMENT (SECOND) OF TRUSTS (1959)).

[16] *Amritt v. Paragon Homes, Inc.*, 474 F.2d 1251, 1252, 9 V.I. 570 (3d Cir. 1973) (applying RESTATEMENT (SECOND) OF AGENCY §§ 27, 265, & 267 (1958)); *Pacheco v. United States*, 409 F.2d 1234, 1236, 7 V.I. 213 (3d Cir. 1969) (applying RESTATEMENT (SECOND) OF AGENCY (1958)); *Phillips v. Andrews*, 332 F. Supp. 2d 797, 802 (D.V.I. App. Div. 2004) (applying RESTATEMENT (SECOND) OF AGENCY §§ 15, 33, & 382-83 (1958)); *Chase v. V.I. Port Auth.*, 3 F. Supp. 2d 641, 642-43 (D.V.I. 1998) (applying RESTATEMENT (SECOND) OF AGENCY §§ 219, 228 (1958)).

[17] *Regan v. Estate Questa Verde*, 48 V.I. 612, 617 (D.V.I. App. Div. 2006) (applying RESTATEMENT (THIRD) OF AGENCY § 4.01 (2006)); *Addie v. Kjaer*, 51 V.I. 836, 843 (D.V.I. 2009) (applying RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006)); *Arlington Funding Srv'cs., Inc. v. Geigel*, 51 V.I. 118, 130-31 (2009) (applying RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006)); *Bertrand v. Cordiner Enters., Inc.*, 53 V.I. 280, 294 (Super. Ct. 2010) (applying RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006)); *Bowen v. Zacko*, 50 V.I. 22, 27 (Super. Ct. 2008) (applying RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006)).

[18] *Bergen v. Bergen*, 439 F.2d 1008, 1012, 8 V.I. 336 (3d Cir. 197J) (applying RESTATEMENT (SECOND) CONFLICT OF LAWS § 26 (1971)); *Coman v. Coman*, 9 V.I. 473, 479 (D.V.I. 1973) (applying RESTATEMENT (SECOND) OF CONFLICTS § 290 (1971)).

[19] *Francis v. Pueblo Xtra Intern, Inc.*, 412 Fed. Appx. 470, 475 (3d Cir. 2010) (applying RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981)); *Spell v. A&J Power Systems*, 42 V.I. 200, 201 (D.V.I. App. Div. 2000) (reversing lower court for failing to apply RESTATEMENT (SECOND) OF CONTRACTS § 281 (1981)), *revision at* 42 V.I. 236 (2000); *Kmart Corp. v. Balfour Beatty, Inc.*, 994 F. Supp. 634, 636, 38 V.I. 251 (D. V.J. 1998) (applying RESTATEMENT (SECOND) OF CONTRACTS §§ 302, 304, & 315 (1981)); *Paez v. Pittsburgh-Des Moines Corp.*, 21 V.I. 237, 240-41 (Terr. Ct. 1985) (applying RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981)).

RESTATEMENT (SECOND) OF JUDGMENTS.[20] When the American Law Institute approved revisions to its property restatements, from 1976 through 1990, Virgin Islands courts transitioned to the RESTATEMENTS (SECOND) OF PROPERTY where applicable.[21] When the American Law Institute revised its property restatements a second time, from 1996 through 2011, Virgin Islands courts once again transitioned to the most current version, the RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES.[22]

As with the 1957 trusts revisions, the 1958 and 2005 agency revisions, the 1969 conflicts revisions, the 1979 contracts revisions, the 1982 judgments revisions, and the multiple property revisions, when the American Law Institute approved a partial revision, published in 1965, to its torts restatement, Virgin Islands also transitioned to the newer version,

---

[20] *Bower v. O'Hara*, 759 F.2d 1117, 1124-25 (3d Cir. 1985) (declining to apply RESTATE-MENT ('FIRST') OF JUDGMENTS because RESTATEMENT (SECOND) OF JUDGMENTS had recently been approved): *Rubin v. Johns*, 109 F.R.D. 174, 177, 22 V.I. 194 (D.V.I. App. Div. 1986) (applying RESTATEMENT (SECOND) OF JUDGMENTS § 2 (1982)); *Pourzal v. Kroll-O Gara Co.*, 46 V.I. 633, 639-44 (D.V.I. 2005) (applying RESTATEMENT (SECOND) OF JUDG-MENTS §§ 27, 84 (1982)); *Lettsome v. Waggoner*, 22 V.I. 94, 97 (Terr. Ct. 1986) (applying RESTATEMENT (SECOND) OF JUDGMENTS § 85(2)(a) (1982)).

[21] *See, e.g., James v. Victoria House, Inc.*, 51 V.I. 566, 570-71 (D.V.I. App. Div, 2009) (applying RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT § 14.8 (1977)); *Kmart Corp. v. Sunshine Shopping Ctr., Inc.*, No. 1:08-cv-100, 2009 U.S. Dist. LEXIS 61802, at *1 (D.V.I. July 20, 2009) (applying RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TEN-ANT § 5.4 (1917)): *Hagglund v. Am. Motors Inn*, 18 V.I. 376, 379 (D.V.I. 1981) (applying RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT § 11.3 (1977)); *Allaire v. U.S. Trust Co. of N.Y.*, 478 F. Supp. 826, 827 (1979) (noting general applicability of RE-STATEMENT (SECOND) OF PROPERTY): *Peppertree Terrace v. Williams*, 52 V.I. 225, 231 (2008) (applying RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT §§ 1.1-1.4 (1977)); *Creque v. Texaco Antilles, Ltd.*, 43 V.I. 107, 111 (Terr. Ct. 2001) (discussing applicability of RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS §§ 1.4, 4.4 (1981)); *Blyden v. Sugar Estates Assocs., LP*, 14 V.I. 227, 232-33 (Terr. Ct. 1977) ("Although prior to the adoption . . . of the Restatement (Second) of Property there may have been some basis for the landlord's position, since the adoption . . . the law in the Virgin Islands now is . . . RESTATEMENT (SECOND) OF PROPERTY § 14.2 (1977). . . .").

[22] *Barclays Investments, Inc. v. St. Croix Estates*, 399 F.3d 570, 577 (3d Cir. 2005) (applying RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 2.1 (1997)); *UMLIC VP LLC v. Matthias*, 234 F. Supp. 2d 520, 523 (D.V.I. 2002) (applying RESTATEMENT (THIRD) OF PROP-ERTY: MORTGAGES § 5.4(a) (1997)); *Land Holdings, Ltd. v. Mega Holdings, Inc.*, 41 V.I. 474, 482 (D.V.I. 1999) (applying RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.5 (1997)); *First Am. Develop. Group / Carib, LLC. v. WestLB*, 53 V.I. 107, 121-22 (Super. Ct. 2010) (applying RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 4.3 (1997)); *Andrews v. Nathaniel*, 42 V.I. 34, 41 (Terr. Ct. 2000) (applying RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 3.4 (1997)).

the RESTATEMENT (SECOND) OF TORTS.[23] Not all of the RESTATEMENT (FIRST) OF TORTS was revised simultaneously, however. The American Law Institute did not approve revisions to sections 504 through 707 until 1976 and not until 1977 for the remaining sections. *See generally* RESTATEMENT (SECOND) OF TORTS vol. III, pp. vii-viii (1977) (explaining reasons for prolonged delay). Accordingly, where the RESTATEMENT (FIRST) OF TORTS remained unrevised, Virgin Islands courts continued to apply it.[24] After the American Law Institute revised the remaining sections of its torts restatements, Virgin Islands courts again transitioned to the latest version.[25] In fact, courts began to take notice of proposed revisions before final approval.[26] A few, including the United States Court

---

[23] *See, e.g., Saldana v. Kmart Corp.*, 260 F.3d 228, 233, 43 V.I. 361 (3d Cir. 2001) (applying RESTATEMENT (SECOND) OF TORTS § 288 (1965)); *Lecointe v. Schyunberg*, 407 F.2d 59, 59, 7 V.I. 4 (3d Cir. 1969) ("Section 339 of the RESTATEMENT OF TORTS, SECOND . . . is the governing law in the Virgin Islands") (internal citation omitted); *Ambrose v. Nat'l Food Discount*, 42 V.I. 229, 232 (D.V.I. App. Div. 2000) (applying RESTATEMENT (SECOND) OF TORTS § 343 (1965)); *Young v. Caribbean Assocs, Inc.*, 358 F. Supp. 1220, 1222, 9 V.I. 510 (D.V.I. 1973) (applying RESTATEMENT (SECOND) OF TORTS § 313(1)(a) (1965)); *Paiewonsky v. Paiewonsky*, 315 F. Supp. 752, 8 V.I. 52, 53 (D.V.I. 1970) (applying RESTATEMENT (SECOND) OF TORTS § 46 (1965)); *Baumann v. Canton*, 7 V.I. 60, 69, 71 (D.V.I. 1968) (applying RESTATEMENT (SECOND) OF TORTS § 288A (1965)); *Louis v. Caneel Bay, Inc.*, 50 V.I. 7, 13 (Super. Ct. 2008) (applying RESTATEMENT (SECOND) OF TORTS § 345 (1965)); *Deery v. Moorhead*, 9 V.I. 99, 101-02 (Municipal Ct., St. Thom. Div. 1972) (applying RESTATEMENT SECOND) OF TORTS §§ 286, 288B, & 477 (1965)).

[24] *See, e.g., Paiewonsky v. Paiewonsky*, 446 F.2d 178, 181, 8 V.I. 421 & n.5 (3d Cir. 1971) (citing RESTATEMENT (FIRST) OF TORTS§ 887 (1939)), *Soto v. Bradshaw*, 351 F. Supp. 602, 603, 9 V.I. 303 (D.V.I. 1972) (noting silence in RESTATEMENT (FIRST) OF TORTS § 888 cmt c. (1939) on question of charitable immunity for torts); *Francis v. Emery Const. Mgmt. Co.*, 11 V.I. 74, 77 (D.V.I. 1974) (applying RESTATEMENT (FIRST) OF TORTS § 573 (1939); *Boyd v. Latalladi.* 8 V.I. 173, 177-78 (Municipal Ct., St. Thom. Div. 1971) (applying RESTATEMENT (FIRST) OF TORTS §§ 822-28 (1939) to interpretation of Virgin Islands private nuisance statute).

[25] *Barefood Architect, Inc. v. Bunge*, 632 F.3d 822, 833-34 (3d Cir. 2011) (applying RESTATEMENT (SECOND) OF TORTS §§ 766-766A (1979)); *In re Tutu Water Wells Contamination Litig.*, 32 F. Supp. 2d 800, 807, 40 V.I. 279 (D.V.I. 1998) (applying RESTATEMENT (SECOND) OF TORTS § 522 (1977)); *Pourzal v. Marriott Int'l, Inc.*, 305 F. Supp. 2d 544, 546-47 (D.V.I. 2004) (applying RESTATEMENT (SECOND) OF TORTS §§ 766-69 (1979)); *Maximin v. Rivera*, 25 V.I. 20 (Terr. Ct. 1990) (applying RESTATEMENT (SECOND) OF TORTS § 520 (1977)); *Cohen v. Raedler*, 17 V.I. 46, 60-63 (Terr. Ct. 1980) (applying RESTATEMENT (SECOND) OF TORTS §§ 593-96, 600-03 (1977)).

[26] *See, e.g., Benjamin v. Cleburne Truck & Body Sales, Inc.*, 424 F. Supp. 1294, 1297, 13 V.I. 545 (D.V.I. 1975) (noting revision to section 695 of RESTATEMENT (SECOND) OF TORTS received approval by the American Law Institute).

of Appeals for the Third Circuit, abandoned the then-current version in favor of an unapproved draft, despite Section 4's clear limitation to "restatements of the law *approved by* the American Law Institute . . ." V.I. CODE ANN. tit. 1, § 4 (1995) (emphasis added).[27]

In *Varlack v. SWC Caribbean, Inc.*, the Third Circuit considered whether the RESTATEMENT (FIRST) OF TORTS had been "superseded by Tentative Draft # 19 of the Second Restatement, § 920A(2) and by the weight of authority in the United States . . ." 550 F.2d 171, 179-80, 13 V.I. 666 (3d Cir. 1977). In elucidating its decision to transition to the more recent version, the Third Circuit explained that:

> Defendants argue that while 1 V.I.C. § 4 does look to the ALI's Restatements for rules of decision "a tentative draft (does not rise) to the same dignity as the final section as approved by the American Law Institute." But we read the statute as looking to the Restatements only as an *expression* of "the rules of common law"; we do not believe it contemplates strict adherence to old Restatements which no longer accurately summarize the common law. Admittedly, a Tentative Draft is not as persuasive a source of information on "the rules of common law" as is a draft which has received final approval. But we are satisfied that the weight of authority now lies behind the position in the Tentative Draft of the Second Restatement, rather than that contained in the First Restatement, which dates from 1939.

*Id.* at 180 (emphasis in original). Post-*Varlack*, Virgin Islands courts began looking to tentative draft revisions in lieu of applying the RESTATEMENT (FIRST) OF CONTRACTS,[28] the RESTATEMENT (FIRST) OF JUDGMENTS,[29] or

---

[27] *See, e.g., Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 13 V.I. 666 (3d Cir. 1977) (discussing and adopting law as laid-out in tentative draft of RESTATEMENT (SECOND) OF TORTS): *Dublin v. V.I. Tele. Corp.*, 15 V.I. 214, 223-28 (Terr. Ct. 1978) (applying tentative drafts of RESTATEMENT (SECOND) OF TORTS §§ 886A-886B) (citing Varlack), *Torres v. Bennett*, 13 V.I. 443, 450-60 (Terr. Ct, 1977) (discussing and adopting tentative drafts of RESTATEMENT (SECOND) OF TORTS §§ 822-33) (citing Varlack).

[28] *DeWindt v. Hess Oil V.I. Corp.*, 15 V.I. 22, 47 (D.V.I. 1978) ("To ascertain what rights the imported employee has under this agreement, we next look to the applicable Virgin Islands contracts law, contained in the tentative drafts of the RESTATEMENT (SECOND) OF CONTRACTS."): *St. Croix Hotel Corp. v. Assoc, of St. Croix Condominium Owners*, 18 V.I. 591 (D.V.I. 1981) (applying RESTATEMENT (SECOND) OF CONTRACTS § 240 (1973 tent. draft)); *Richardson v. O'Brien*, 17 V.I. 402 (D.V.I. 1980) (applying various sections of tentative draft

the RESTATEMENT (FIRST) OF PROPERTY: SERVITUDES.[30] *Varlack* established no bright lines. *Varlack* set no test for assessing when transition to a revised restatement was proper. Instead, *Varlack* began chipping away at courts' strict adherence to approved restatements.

■ The propriety of abandoning approved restatements in favor of tentative draft revisions is not at issue here. Nonetheless, it does illuminate an important consistency in the pattern and practice of Virgin Islands courts. Courts in the Virgin Islands consistently apply the most recent version of the restatements in the absence of contrary local law. That has occurred regarding every revision to the restatements except one: the RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY.

In *In re Manbodh Asbestos Litigation I*, the court considered whether to apply the RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY or continue with the RESTATEMENT (SECOND) OF TORTS. *See generally Manbodh I*, 47 V.I. 215. The court observed that the products liability restatement significantly restructured failure to warn causes of action. *Id.* at 225-26. Different outcomes would result depending on which restatement version was applied. *Id.* at 226. Because Virgin Islands courts apply restatements only in the absence of contrary local laws, the court began by examining the language of Section 4. The Court found

---

of RESTATEMENT (SECOND) OF CONTRACTS); *George v. Hertz Rent-A-Car*, 17 V.I. 245, 248 n.3 (Terr. Ct. 1981) ("All the tentative drafts of the second RESTATEMENT OF CONTRACT [sic] have been approved by the American Law Institute and are binding. See, 1 V.I.C. § 4 "); *Remole v. Sullivan*, 17 V.I. 193, 197 (Terr. Ct. 1981) ("As an approved Restatement, the rules of the Tentative Draft No. 12 must be used as the rules of decision by Virgin Islands' courts."). *But see Action Engineering v. Martin Marietta Alumina*, 18 V.I. 485, 497 n,5 (D.V.I. 1981) ("Although this court has tempered its reliance on the Restatements in view of the date of their publication, and on occasion we have utilized the tentative drafts, we are in no manner obligated to accept positions proposed in the tentative drafts.") (internal citations omitted), *rev'd by Action Engineering v. Martin Marietta Alumina*, 670 F.2d 456, 19 V.I. 641 (3d Cir. 1982) (noting approval of RESTATEMENT (SECOND) OF CONTRACTS subsequent to appeal).

[29] *Clarenbach v. Consolidated Parts, Inc.*, 17 V.I. 123, 130-31 (Terr. Ct. 1980) ("It is the opinion of this Court . . . that the RESTATEMENT (SECOND) OF JUDGMENTS § 88 (Tent. Draft No. 2, 1975) supersedes the position adopted by the first Restatement with respect to application of collateral estoppel by a non-party.").

[30] *Peter Bay Owners Ass'n Inc. v. Stillman*, 163 F. Supp. 2d 537, 547 (D.V.I. 2001) (citing *Varlack*), *aff'd in part and rev'd in part, Peter Bay Owners Ass'n. Inc. v. Stillman*, 294 F.3d 524 (3d Cir. 2002). The RESTATEMENT (FIRST) OF PROPERTY: SERVITUDES, published in 1944, was not revised during the second property restatement revisions. By the time the court issued its ruling, the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES had been approved. *See Peter Bay*, 163 F. Supp. 2d at 547 n.6.

ambiguity in the phrase "local laws" "To date, courts have interpreted 'local laws' to include both legislation and common law precedent. 'Local laws', though, can just as easily be interpreted to connote legislation *or* precedent." *Id.* at 227 (emphasis in original) (internal citations omitted). The court also found ambiguity in the phrase "restatements of the law" because "it is unclear to which installment of the Restatement local law must be contrary. No court has ever identified which version of the 'restatements of law' was mandated by the Legislature . . ." *Id.* at 228-29.

According to the *Manbodh I* court, "the Legislature advocated the Restatements . . . to lay a foundation for courts to begin crafting decisions while the Legislature took the time necessary to draft the Code for the Virgin Islands." *Id.* at 234. "[T]he Restatements were meant to guide judges . . . in their crafting of the local common law." *Id.* The court believed "it [was] unlikely that the Legislature contemplated the amendment of the Restatements at all, and much less so in the fashion that the ALI did." *Id.* at 235. As a result, the *Manbodh I* court concluded that Section 4's "reference to the 'restatements' refers to [that] Restatement in existence . . . 1957 and reflects an intent to fill a void until such a time when the Legislature codified law or the judicial branch confirmed the propriety of particular Restatements." *Id.* at 237. Since Section 4 is still in force,

> current law would be some combination of statutes, judicially adopted Restatement topics, and where no courts have spoken, the common law majority rules, first as expressed in the Restatements in existence in 1957 to the extent that they still represent the majority rule, then, as expressed in subsequent versions, with common law precedents from the United States supplying the balance.

*Id.* at 235. According to this approach, Virgin Islands courts apply statutory law, if any, and if none, then Virgin Islands case law applying and interpreting the restatements. Only when statutes and prior precedent do not resolve a matter should courts turn to the restatements in the first instance. If the restatements do not address the matter, then courts may look to the general common law.

The *Manbodh I* court reached this conclusion from two prior assumptions: (1) Virgin Islands courts must apply common law majority rules, and (2) contrary local laws encompass both statutes *and* decisions

79

of Virgin Islands courts. *See id.* at 230 ("Courts must *first follow local precedent* and second, the majority rules of the common law. . . .") (emphasis added). In the past Virgin Islands courts turned to newer restatements only in search of the majority rule. Through their rulings, they "substitute[ed] the corresponding newer [restatement] provisions to overrule [prior] precedent." Id. at 237. As a result, "previous adoption of an earlier restatement [in case law] . . . now constitutes local law to the contrary . . . preventing] the application of 'the more recent restatement through Section 4. *Id.* at 240.

This Court is not convinced that earlier restatements remain in force simply because courts have applied them. The application of more recent restatements should not be forestalled "until the Legislature or appellate courts apply such a directive." *Id.* at 243. The phrase "local laws" has been interpreted to encompass both case law and statutes. *See, e.g., Gov't of the V.I. v. Harris*, 938 F.2d 401, 414 (3d Cir. 1991) ("Absent governing statute *or precedent*, a 'hierarchy of sources for Virgin Islands law' is found under [Section 4].") (emphasis added) (quoting *Edwards v. Born, Inc.*, 792 F.2d 387, 389 (3d Cir. 1986)); *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 357-58 (3d Cir. 1986) ("Title 1, § 4 of the Virgin Islands Code provides that in the absence of local statutes *and precedents* to the contrary, courts should follow the common law principles expressed in the various ALI Restatements of Law.") (emphasis added); *Co-Build Cos., Inc. v. V.I. Refinery Corp.*, 570 F.2d 492, 494-95, 15 V.I. 528 (3d Cir. 1978) ("since there are *no Virgin Islands' precedents* which are directly applicable, we must look *in the first instance* at the relevant provisions in the Restatement of Law, Contracts."); *In re Tutu Wells Contamination Litig.*, 846 F. Supp. 1243, 1254 (D.V.I. 1993) ("where, as here, no precedents relate specifically to the adjudication of a Virgin Islands dispute, the courts are directed to turn to the Restatement of the Law as approved by the American Law Institute for the applicable rule of law.") (citing *Co-Build Cos., Inc. v. V.I. Refinery Corp.*, 570 F.2d 492, 15 V.I. 528 (3d Cir. 1978)). But it has also been interpreted contrariwise. *See, e.g., Pascal v. Charley's Trucking Srvs, Inc.*, 436 F. Supp. 455, 456, 13 V.I. 555 (D.V.I. 1977) ("It has always been the thought of this Court, that by virtue of Title 1, V.I.C. § 4. this jurisdiction finds itself in a very distinctive position in that the rules expressed in the Restatements of Law have been made a part of our *statutory law*.") (emphasis added). Putting that debate aside, other than *Manbodh I* and its

progeny, this court has uncovered no precedent, mandatory or persuasive, where a Virgin Islands court refused to apply the latest restatement because courts previously employed an earlier restatement version.

For example, in *Edwards v. Born, Inc.*, the Third Circuit explained that "[i]n the event that no statute *or precedent* governs the issue, § 4 instructs the district court to look to the common law rules articulated in the various Restatements. If there is no Restatement rule on point, § 4 directs the court to the common law rules as generally understood and applied in the United States.' " 792 F.2d 387, 389 (3d Cir. 1986) (emphasis added). In *Edwards*, the lower court found that a client's representations to the opposing party cloaked the attorney with apparent authority to settle litigation. *Id.* at 390. That holding was challenged on appeal as being a minority rule, and therefore violative of Section 4. *Id.* The Third Circuit disagreed, holding that "[i]n the absence of a clear trend in either direction, the district court of the Virgin Islands may apply the better rule.'" *Id.* In reaching that conclusion, the *Edwards* court reviewed the RESTATEMENT (SECOND) OF AGENCY for general agency principles and considered general common law for those principles' application in an attorney-client setting. *Id.* at 389. Both at the appellate and trial levels, the courts examined case law only to *amplify* their analysis of agency law in the attorney-client setting. *See generally id.; Edward v. Born, Inc.*, 608 F. Supp. 580 (D.V.I. 1985).

In another case, the District Court grappled with applying both the Virgin Islands' contributory negligence statute and the common law defense of assumption of the risk to an action alleging both negligence and strict liability. *Murray v. Beloit Power Systems, Inc.*, 450 F. Supp. 1145, 1145-46 (D.V.I. 1978) ("*Murray I*"). A jury had found the defendant liable under both theories. *Murray v. Fairbanks Morse*, 610 F.2d 149, 151, 16 V.I. 647 (3d Cir. 1979) ("*Murray II*"). The parties disputed the instructions the Court should give the jury regarding contributory negligence and assumption of the risk. *Murray I*, 450 F. Supp. 2d. at 1146. Contributory negligence is not a viable defense to strict liability actions. *See id.* at 1146 (citing RESTATEMENT (SECOND) OF TORTS § 402A cmt n. (1965)). Assumption of the risk is a defense and does bars recovery. *See id.* at 1147 (citing RESTATEMENT (SECOND) OF TORTS § 523 (1977)). The District Court decided to merge both into a general negligence instruction. *Id.* at 1147. In its verdict, the jury found Murray five percent at fault.

*Murray II*, 610 F.2d at 151. The District Court then reduced the award proportionally. *Id.* In justifying its approach, the District Court stated:

> I realize that today's decision appears to run counter to the position adopted by the American Law Institute, particularly as to the ramifications of a finding by the trier of fact that an injured plaintiff unreasonably exposed himself to an appreciable and known risk. I do not feel, however, that 1 V.I.C. § 4 transformed the A.L.I. approved restatements into a civil code. As stated by the Third Circuit Court of Appeals in *Varlack v. SWC Caribbean, Inc.*, the restatements constitute the rules of decision in the Virgin Islands only to the extent that they accurately express prevailing rules of common law. More importantly, the prevailing rules of common law . . . are binding on local courts only in the absence of local case law or statutory law to the contrary. As implicitly acknowledged by the Third Circuit in *Co-Build Companies, Inc. v. Virgin Islands Refinery Corp.*, this Court *has the power to deviate from prevailing rules of common law to create "local laws to the contrary"* within the meaning of 1 V.I.C. § 4.

*Murray I*, 450 F. Supp. 2d at 1147 (emphasis added) (citations omitted).

On appeal, the Third Circuit affirmed the outcome and District Court's approach in reaching that outcome. *Id.* at 150. The Third Circuit never addressed the District Court's conclusion, however, that it had the power, in contravention of Section 4, to deviate from the Restatements in order to create local case law to the contrary in furtherance of Section 4. Instead, the Third Circuit found a loophole for applying the Virgin Islands comparative liability statute to Restatement strict liability actions because, noting that "although the Virgin Islands comparative negligence statute does not expressly authorize its application to strict liability actions, it does not expressly forbid it [either]." *Murray II*, 610 F.2d at 157.

"As [the *Manbodh I* court] demonstrates, there are a number of areas regarding the construction of 1 V.I.C. § 4 that are *still open for debate*." *Am. Int'l Ins. Co. of P.R. v. Lampe GmbH*, 307 Fed. Appx. 645, 648 n.2 (3d Cir. 2009) (emphasis added) (citing *Manbodh I*, 47 V.I. 215 (Super. Ct. 2005)). This Court does not agree that the Virgin Islands must adhere to prior restatements simply because they were in force when Section 4 was enacted in 1957. Before *Manbodh I*, both the Appellate Division and

this Court applied the RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY.[31] Since *Manbodh I*, all but one court have not.[32] None, however, including *Manbodh I*, are binding on this Court. As outlined above, Virgin Islands courts routinely transitioned to newer restatements upon approval by the American Law Institute, and as with *Varlack* and its progeny, often before formal approval. To this Court's mind, this constitutes an overwhelming body of judicial practice, spanning over half a century, and should not be overlooked. Of particular note as well are the practices of Judge Maris.[33]

---

[31] *Paul v. Electric Ave.*, D.C. Civ. App. No. 1999/055, 2001 U.S. Dist. LEXIS 14261 (D.V.I. App. Div. Aug. 29, 2001) (unpub.) (applying RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (1998)); *Hamlet v. Oliver Exterminating, Inc.*, 44 V.I. 99, 110-12 (Terr. Ct. 2001) (noting recent approval of RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY (1998) but finding summary judgment warranted under either version).

 *Paul v. Electric Ave.*, D.C. Civ. App. No. 1999/055, 2001 U.S. Dist. LEXIS 14261 (D.V.I. App. Div. Aug. 29, 2001) (unpub.) (applying RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (1998)).

[32] *Bodley v. Foster Wheeler Energy Corp.*, No. 10-CV-51, 2011 U.S. Dist. LEXIS 45006, *9 n.2 (D.V.I. Apr. 26, 2011) ("[I]t is settled law that in the Virgin Islands, the Second, not Third, Restatement of Torts applies. Thus, the Court finds no basis for holding plaintiff to the standard set forth only in the Third Restatement of Torts.") (referencing RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 (1998)). *See also id.* at *5 (citing *In Re Manbodh Asbestos Litig I*, 47 V.I. 215, 242 (Super. Ct. 2005)); *Banks v. Int'l Rental & Leasing Corp.*, No. 2002-cv-201, 2008 U.S. Dist. LEXIS 12214 n.5 (D.V.I. Feb. 13, 2008) ("As section 402A [of the RESTATEMENT (SECOND) OF TORTS] has received widespread acceptance in Virgin Islands courts, it is considered a local law.") (citing *inter alia In Re Manbodh Asbestos Litig I*, 47 V.I. 215, 242 (Super. Ct. 2005)). *But see Mendez v. Hovensa*, L.L.C., 49 V.I. 826, 833-34 (D.V.I. 2008) (denying summary judgment after applying RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 3 (1998)).

[33] Judge Maris's service to the Virgin Islands and dedication to advancing Virgin Islands jurisprudence cannot be overemphasized. The Legislature of the Virgin Islands twice honored Judge Maris formally. In 1956, the Legislature bestowed upon him the Virgin Islands Medal of Honor for "his extraordinary and outstanding contributions to the preparation of the Virgin Islands Code." 1956 V.I. Sess. L. p. 205-06. Next, in 1973, the Legislature passed a resolution, stating:

> WHEREAS the Honorable Albert Branson Maris, now in his eightieth year, has contributed immeasurably to the founding principles, early development and ever-increasing maturity of the Territory of the Virgin Islands of the United States, in an individual capacity and as a judge . . . and
> WHEREAS the Honorable Albert Branson Maris may list among his greatest contributions to the Virgin Islands (1) his participation in and considerable influence over the formulation and drafting of the revised Organic Act of the Virgin Islands of 1954; (2) his participation on the Advisory Code Committee in the preparation of the first Code

Maris served as an advisor to the American Law Institute's editorial committee and worked on the RESTATEMENT (FIRST) OF JUDGMENTS.[34] As someone intimately involved in drafting our code and in promulgating the restatements, he would have known that the American Law Institute envisioned establishing "a system by which the legal profession will be informed of changes in the law as expressed in the first Restatement, and when the time is ripe therefor, produce a revision of an entire subject." *Restatement in the Courts*: History of the American Law Institute and the First Restatement of the Law 21 (1945). Moreover, Maris also served on the Virgin Islands' Code Advisory Committee, tasked with preparing the Virgin Islands Code.[35] While Judge Maris may not have envisioned Section 4's endurance five decades hence, it's reasonable to presume he knew the restatements were not chiseled on stone tablets. His judicial opinions lend support to this presumption.

In *Weston v. Stuckert*, Judge Maris, siting by designation on the United States Court of Appeals for the First Circuit, heard a case arising out of Puerto Rico regarding land in St. John U.S. Virgin Islands. 329 F.2d 681 (1st Cir. 1964). In applying the law of the Virgin Islands, as the location of the property, Judge Maris applied the revised trusts restatement along with the as-yet-unrevised restitution and conflicts of laws restatements. *Id.* at 682 n.3 (applying RESTATEMENT (SECOND) OF TRUSTS § 404 (1959); RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937), and RESTATEMENT (FIRST) OF CONFLICTS OF LAWS § 239 (1934)). *Weston* was

---

of Laws for the Virgin Islands . . . ; (3) being instrumental in securing the appointment of our present chief judge of the District Court, the first native-born Virgin Islander to be appointed a United States District Court Judge; and . . .

WHEREAS the Honorable Albert Branson Maris has literally done more to make, shape, and interpret the laws of the Virgin Islands of the United States than any other individual in the history of these Virgin Islands . . .

That the Tenth Legislature of the Virgin Islands hereby expresses the great appreciation and gratitude of all Virgin Islanders. . . .

1973 V.I. Sess. L. p. 368-69. *See also* Hon. Dolores K. Sloviter, *Memorial Tribute to the Honorable Albert Ranson Maris*, 62 TEMP. L. REV. 471, 474 (1989) ("He was called the Moses for the Virgin Islands. . . . Judge Almeric Christian frequently has said that Virgin Islands residents believe 'that when Judge Maris comes down to the Virgin Islands, he eschews boat and plane. He walks.' ").

[34] *See Restatement in the Courts: History of the American Law Institute and the First Restatement of the Law* 35 (1945).

[35] *See, supra*, note 31.

decided just eight years after Section 4's enactment, yet Judge Maris turned to, without mention, the most-current restatement version at the time. A year earlier, in *Wallace v. Kilbride*, Judge Maris also applied the revised trusts restatement. 319 F.2d 760, 763, 4 V.I. 480 (3d Cir. 1963) (applying RESTATEMENT (SECOND) OF TRUSTS §§ 442-43 (1959)). Four years later, Judge Maris, sitting as a trial judge, applied the recently-revised restatement of torts. *See Baumann v. Canton*, 7 V.I. 60, 69, 71 (D.V.I. 1968) (applying RESTATEMENT (SECOND) OF TORTS § 288A (1965)). In each instance, Judge Maris cited the current version of the restatements as the governing law. Judge Maris's application of subsequent revisions is compelling, particularly given his position in our legal history.

■■ This Court echoes the *Manbodh I* court's concern that no explanation was ever provided for "the apparent delegation of the Legislature's lawmaking authority and responsibility to a non-governmental entity, the ALI . . ." *Manbodh I*, 47 V.I. at 229. The Legislature has not seen fit to amend Section 4 since its enactment. Moreover, Section 4's continued viability is viewed by the Appellate Division of the District Court of the Virgin Islands, the United States Court of Appeals for the Third Circuit, and the Supreme Court of the Virgin Islands as evidence that the Legislature of the Virgin Islands intends for the majority rule to apply in the continued absence of contrary legislation. *Robles v. Hovensa, L.L.C.*, 49 V.I. 491, 498 (2008) (citations omitted). "[U]nlike other jurisdictions, where the Restatement merely serves as a summary of general legal principles for courts to accept or reject, the Virgin Islands has designated the Restatement as its law, *until a contrary statute is approved.*" *Monk v. V.I. Water & Power Auth.*, 53 F.3d 1381, 1387-88, 32 V.I. 425 (3d Cir. 1995) (emphasis added). *See also id.* at 1388 ("if the Virgin Islands wishes to abrogate the doctrine of assumption of risk . . . its legislature must say so, as it did in 1973 with contributory negligence."). Restatements constitute our common law even when not based on the common law. *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 185 n.5 (2009). Moreover, as of 2000, the Third Circuit held that "[a]ll of the ALI Restatements of the Law . . . have been adopted as definitive sources of rules of decision by the Virgin Islands Legislature." *James v. Zurich-Am Ins. Co. of Ill*, 203 F.3d 250, 255 (3d Cir. 2000). Accordingly, this Court does not find it proper to part with decades of practice and single out the inapplicability of one version of the

restatements, particularly when the decisions of the Appellate Division of the United States District Court for the District of the Virgin Islands and of the United States Court of Appeal for the Third Circuit remain binding on this Court. *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (2009). Their practices must be at least persuasive. Based on the discussion above, this Court finds that a revised restatement should be viewed presumptively as the majority rule and applied in Virgin Islands courts.

### c. APPLICATION OF RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY

■ ■ Under the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons . . . caused by the defect." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (1997). A seller is defined as someone who "transfers ownership . . . either for use or consumption or for resale leading to ultimate use or consumption. Commercial product sellers include, but are not limited to, manufacturers, wholesalers, and retailers." *Id.* § 20(a). A product is defined as "tangible personal property distributed commercially for use or consumption." *Id.* § 19(a). Products are considered defective

> when, at the time of sale or distribution, it . . . is defective because of inadequate instructions or warnings. A product . . . is defective because of inadequate instructions or warnings when the foreseeable risk of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller . . . or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

*Id.* § 2. "Commercial sellers must provide reasonable instructions and warning about risks of injuries posed by products." *Id.* § 2 cmt. i. Sellers are not subject to liability, however, "for failing to warn or instruct regarding risks and risk-avoidance measures that should be obvious to, or generally known by, foreseeable product users." *Id.* § 2 cmt. j.

■ Here, the most applicable law is that found in the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY. Hartzog alleges that Plaza Extra, as a retail supermarket, is a seller who transferred ownership of a

product, a *dieffenbachia* plant, to her for her ultimate use. She alleges that Plaza Extra failed to provide reasonable warnings about the risks of injury *dieffenbachia* plants could cause if ingested. In its Answer, Plaza Extra claimed that the "potential harm posed by the ingestion of non-food plants, such as Diffenbachia [sic] is open and obvious and, accordingly, [Plaza Extra] was under no duty to warn. . . ." (Answer ¶ 12, filed May 12, 2005.) Upon evaluation of all the evidence, a reasonable jury could find in favor of either party. Accordingly, the Court finds that material facts remain genuinely disputed between the parties as to Plaza Extra's negligence, particularly when the appropriate legal duty is applied.

## IV. NEGLIGENT MISREPRESENTATION

In the Virgin Islands, negligent misrepresentation is actionable on two alternate grounds based on the harm alleged. Negligent misrepresentation resulting in physical harm is actionable under section 311 of the RESTATEMENT (SECOND) OF TORTS. False information given negligently subjects a tortfeasor to liability for resulting physical harm to another or a third person. RESTATEMENT (SECOND) OF TORTS § 311 (1965). Liability under section 311 "extends to any person who . . . undertakes to give information to another, and knows or should realize that the safety of the person of others may depend on the accuracy of the information." Id. § 311 cmt. b. Negligent misrepresentation resulting in pecuniary loss is actionable under Section 552. Liability under section 522 extends to persons "who . . . supplies false information for the guidance of others. . . ." RESTATEMENT (SECOND) OF TORTS § 552 (1977).

To prevail on a cause of action for negligent misrepresentation, whether under either Section 311 or Section 552, false information must be supplied. In the Complaint, Hartzog clearly plead that "[t]he plants were advertised as safe to purchase and as houseplants plants safe for the house. . . ." (Compl. ¶ 5.) Now, however, neither party disputes that Plaza Extra failed to give any information to Hartzog regarding the houseplants. Before a party may be held liable for a negligent misrepresentation, there must first be a representation that was false. Here, Hartzog can point to none. Moreover, she conceded this point. (*See. e.g.*, Pl. Resp. to Def. Stmt of Undisputed Facts in Supp. of Summ. J. 6, filed Mar. 18, 2010 ("Emanda Hartzog never saw any advertisements, either print or television, for the plants sold at Plaza Extra in 2003. **Plaintiff's Response**: This fact is not in dispute.") (citations omitted).

■ Accordingly, the Court finds no material fact in dispute. The depositions submitted show clearly that Plaza Extra did not make any representation to Hartzog, not through its employees, its register receipts, signs, warnings, or labels, or television or print advertisements. There is no material dispute as to this cause of action. Accordingly, summary judgment is granted to Plaza Extra on negligent misrepresentation.

## V. CONCLUSION

"Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty." *E. River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 866, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). The American Law Institute's RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY represents the current state of products liability law. While a few Virgin Islands courts have declined to follow it, this Court is not in agreement, particularly given its previous application in *Hamlet* and the juxtaposition with the overwhelming pattern and practice of Virgin Islands courts of consistently applying the latest version of the various restatements of law. The Legislature is certainly cognizant of that practice and may enact laws to constrain its.

This matter highlights the American Law Institute's reasoning for revising its product liability laws. Hartzog would be left without a remedy under the RESTATEMENT (SECOND) OF TORTS because Hartzog was not injured on Plaza Extra's business premises. Moreover, Johnson, the manufacturer of the houseplants, conveyed no warnings or information to Plaza Extra, the retailer. Plaza Extra also did not make any representation as to the houseplants Hartzog purchase. This result forecloses seller liability.

Under the revised restatement, however, a jury may find Plaza Extra liable if it finds reasonable a duty to warn of a plant's potential toxicity. A jury may also find Plaza Extra's liability diminished by Hartzog's absence when her son was injured. All persons in the distribution chain are equally liable and, concomitantly, equally responsible for product safety. Viewed against this standard of care, the Court finds that genuine issues of material fact remain in dispute between the parties. Summary judgment must be denied. An appropriate order will follow.

**DONE AND SO ORDERED** this 6th day of September, 2011.